## Cisco v. Cisco.

(Decided January 22, 1918.)

## Appeal from Crittenden Circuit Court.

1. **Husband and Wife—Separation Agreement—Validity.**—Mere inadequacy of consideration is not of itself sufficient to set aside a separation agreement between husband and wife.
2. **Witnesses—Husband and Wife—Competency of Wife.**—A wife is not competent to testify against her husband as to the circumstances attending the execution of a separation agreement.
3. **Husband and Wife—Separation Agreement—Validity—Evidence.** —Where there is neither direct nor circumstantial evidence tending to show that the wife was the victim of coercion, undue influence, imposition, misrepresentation, or fraud on the part of the husband, or such concealment on his part as would amount to misrepresentation or fraud, but the evidence shows that she was fully advised by the attorney, employed to prepare the separation agreement, as to the character and value of her husband's estate, and of her right to recover by suit a much larger sum than that agreed upon, the separation agreement will not be set aside.

J. W. BLUE, JR., and C. S. NUNN for appellant.

GORDON & GORDON & MOORE, and A. C. MOORE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On March 31, 1914, William Cisco and his wife, Lorena Cisco, entered into a separation agreement whereby Mrs. Cisco, in consideration of $2,550.00 cash or its equivalent and certain provisions, supplies, live stock, and household and kitchen furniture, released all her rights in her husband's property. On March 3, 1916, William Cisco, brought this suit for an absolute divorce and a confirmation of the separation agreement. By answer and counter-claim, Mrs. Cisco denied the allegations of the petition, attacked the validity of the separation agreement, and asked for alimony and a divorce from bed and board, on the ground of cruel and inhuman treatment. The allegations of her answer and counter-claim with respect to the separation agreement are as follows:

"She says it is true that she left the house of plaintiff, and at plaintiff's instance she went to the office of his attorneys, where plaintiff has the agreement prepared, copy of which is filed with the petition but that the same was signed by this defendant without information or knowledge upon her part as to the value of the estate owned by plaintiff and as to his means and ability, and without full information as to her rights in the premises. She now says that she has been advised that the plaintiff owns real estate consisting of 400 acres or more of land of the value of $12,000.00 or more, and in addition to this he is the owner of personal property and was at the time of the pretended settlement set out in the petition, which personal property was of the value of several thousand dollars, and she now says that said settlement was not a sufficient or adequate settlement considering the circumstances and financial condition of plaintiff, and was made by her without being fully advised as to her rights in the premises."

By an amended answer and counter-claim, she further alleged that all of the property owned by her husband was accumulated through their joint efforts and that she, by her labor, self-denial, and economy, had materially contributed to the estate. On motion of plaintiff, the foregoing allegations were stricken from the answer and counter-claim on the ground that they exhibited no cause why the separation agreement should not be confirmed. Notwithstanding this action of the trial court, the parties thereafter took proof, not only covering the circumstances under which the separation agreement was executed, but bearing on their respective claims to a divorce.

The chancellor sustained exceptions to all the testimony except that bearing on the question of divorce. Being of the opinion that both parties were at fault, he adjudged that neither was entitled to a divorce and confirmed the separation agreement. Mrs. Cisco appeals.

The evidence as to the circumstances under which the separation agreement was made is as follows: Mrs. Cisco left her husband's home on Sunday and went to the home of her daughter. She says that her husband came to see her on Monday and she then agreed to accept $2,550.00 in settlement of her rights in his property. On leaving, her husband told her to go to the office of Mr. Moore, where the agreement would be drawn. On Tuesday she went to Mr. Moore's office in company with Ed Massie. She says that while she was talking to Mr. Moore, her husband came in. At his suggestion they then went into a back room and she demanded $3,000.00. Finally they agreed on a settlement and the contract was drawn accordingly by Mr. Moore, and then signed by her husband. She further says that at the time she signed the contract, she was not advised as to what property her husband owned or the value thereof, and that she was ignorant of her rights therein. According to the testimony of A. C. Moore, and his son, Virgil Moore, Mr. Cisco came to their office and stated that he and his wife had made a settlement and he wanted them to draw up the papers. After he left, Fulton Cisco, his son, came in and informed the Messrs. Moore, that his father and mother had made a settlement and would call the next day for the purpose of having the agreement prepared. On the following morning, Mrs. Cisco and Ed Massie, appeared and informed the Messrs. Moore, that she had come to advise with them about a settlement between her and her husband, and to employ them to institute suit for her if they failed to agree upon a settlement. Mr. A. C. Moore then informed Mrs. Cisco that he had been told by Fulton Cisco, that his father had in the bank from $7,000.00 to $10,000.00, and was worth from $20,000.00 to $25,000.00. Mrs. Cisco then told him why she and her husband had separated and he informed her that if she could prove her statements, she could recover by way of alimony from $3,000.00 to $5,000.00, and that Mr. Cisco would have to pay the costs of the suit, including her attorney's fee. Mrs. Cisco then stated that she preferred to settle and save the property for the children,

and that she would first see what she could do with her husband in the way of a settlement. Thereupon, Mr. Cisco appeared and he and his wife went into the back room and closed the door. When she came out, Mrs. Cisco informed the Messrs. Moore that she and her husband had agreed on a settlement in which she was to take certain notes of Grover Damron, her son-in-law. A. C. Moore then advised her not to accept the notes, but Mrs. Cisco expressed her entire willingness to do so. Thereupon the agreement was drawn, signed and acknowledged by the parties. However, before she signed the contract, Mr. A. C. Moore informed her that she did not receive sufficient property in the settlement and should not have made the settlement.

Except in actions for divorce by the wife based on cruel and inhuman treatment as defined in sub-sections 2 and 3, section 2117, Kentucky Statutes, the wife is not a competent witness against her husband. Acts 1912, chapter 104, page 295; Civil Code, section 606. It therefore follows that Mrs. Cisco's testimony concerning the separation agreement can not be considered. Eliminating her testimony, the only testimony on the subject is to the effect that she was not only fully advised as to the character and value of her husband's property, but was also informed that the amount which she received in settlement was less than she should have received and that she could recover a much larger amount by suit. At the time the agreement was made, she and her husband had separated. Aside from the inadequacy of the settlement, a fact of which she was apprised, and which is not of itself sufficient to set aside the contract, Sumner v. Sumner, 121 Ga. 1, 48 S. E. 727; Gaines v. Gaines' Admr., 163 Ky. 260, 173 S. W. 774, there is neither direct nor circumstantial evidence tending to show that she was the victim of coercion, undue influence, imposition, misrepresentation, or fraud on the part of her husband, or of such concealment on his part as would amount to misrepresentation or fraud. Passing then the sufficiency of the allegations of the answer and counter-claim respecting the validity of the separation agreement and considering the question in the light of the evidence which, it is not claimed, was not fully developed, we perceive no reason for reversing the judgment.

Judgment affirmed.