### Middleton, et al. v. Middleton, et al.

(Decided February 24, 1925.)

#### Appeal from Fayette Circuit Court.

1. Husband and Wife—Evidence Held Insufficient to Warrant Can-cellation of Property Settlement for Fraud or Mistake.—Evidence held insufficient to warrant cancellation of property settlement contract between husband and wife made in contemplation of separation on ground of fraud or mistake.

2. Husband and Wife—Property Settlement Agreement Held Not Invalidated Because Husband Refrained from Defending on Wife's Promise Not to Seek Divorce on Ground of Adultery.—Where wife was entitled to divorce on several grounds, including adultery, that husband refrained from defending on condition that wife would seek her divorce on grounds other than adultery held insufficient to invalidate property settlement on ground of illegal considera-tion.

3. Divorce—Husband and Wife—Property Settlement Agreements Made After or in Contemplation of Separation will be Upheld— Separation Agreement Not Affected by Order of Restoration in Divorce Proceeding.—Property settlement agreements between husband and wife, if fair, and made after final separation, or in contemplation of permanent separation, will be upheld, nor is such an agreement affected by statutory order of restoration in sub-sequent divorce proceeding.

JOHNSTON & YANCEY and RIVES & SHANNON for appellants.

GEO. C. WEBB and A. M. HALL for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Af-firming.

A. C. Middleton sued his former wife, Mary K. Mid-dleton, now Mary K. Chambers, to recover a house and lot in Lexington, Ky., and a one-third interest in 1,600

acres of land in Mississippi, and other property which he claims that she received from him by virtue of the marriage relation. The parties were divorced from each other by a judgment of the Fayette circuit court in November, 1919, without an order of restitution being made.

The defendant contested this, pleaded a written settlement of their property rights made in contemplation of separation and by counterclaim sought to recover a diamond ring and other personal property from plaintiff.

In addition to other matters pleaded, the validity of the contract of separation is attacked by the reply. From a judgment dismissing the petition the plaintiff appeals.

The parties were married in the year 1914. They were then quite young and apparently attached to each other. For the first two years after their marriage they lived happily together. A son was born in the second year, and another two years later. The husband is shown to have been intemperate. This became noticeable after the birth of the first child and increased as time passed on. He also became addicted to gambling and incontinence. The wife learned of these vices and marital troubles arose, which were patched up from time to time. She claims to have found incriminatory letters in his pockets. He undertook to reform and joined the church and she surrendered the letters, but it appears kept copies of them.

He had a lucrative position with a loan company in Lexington which he valued at several thousand dollars, but spent his money in gambling and dissipation and she was sometimes in want. On account of his habits it was arranged between them and his employer that a certain part of his salary be retained and paid her for the support of his family. In all this he seems to have been fond of her, but neglected her shamefully; was unfaithful to his marriage vows and sometimes treated her brutally and cruelly.

In the spring of 1919 he inherited some property from his mother's estate and purchased a residence in Lexington, which he repaired and furnished, the residence being of the value of $4,500.00 or $5,000.00, and the furniture of about $2,000.00. At the suggestion of mutual friends the residence was deeded to his wife. He also bought a high-powered car and indulged more and more in the practices above indicated. In the summer she received positive evidence of his infidelity and

charged him with it. He admitted this but became very penitent, implored her forgiveness and promised faithful obedience to his marriage vows in the future, and she condoned his offenses.

About this time he also deeded to her a one-third interest in some 1,600 acres of land in Mississippi, this being of the value of about $5,000.00, and arranged for the family to take a trip to Michigan, and they spent the month of August in that state, apparently forgetting the past.

They returned to Lexington about the first of September and almost immediately he fell into his old habits and behaved worse than before. When she learned of this and became satisfied of its truth she refused to live with him longer and determined to bring suit for divorce. He accompanied her to the office of her attorney, who was also his friend. He requested this attorney to persuade her to desist, but she was firm in her intention. He did not want her to bring the suit on the grounds of adultery but said that he would not contest the suit if brought on other grounds.

A settlement of property rights in contemplation of separation was drawn by the attorney and executed in duplicate by the parties. In terms it provided that she was to have the property theretofore deeded to her and the house furnishings; that she was to make no claim for alimony was to surrender all claims and interest in his other property, and that upon a sale of the property of either that the other would join in the conveyance.

Aside from this the husband desired his wife to remain in the Lexington residence and keep the children where he could see them. He also desired her to permit his uncle to live with her and orally agreed to pay her as much as he was able for the maintenance of the children.

A petition was filed for divorce within a week or so thereafter on the grounds of drunkenness and cruelty. He made no contest and in November following it was granted. She continued to live in Lexington for about a year, during which time he visited the children regularly at her home and paid her an average of $100.00 or more per month as maintenance. In November, 1920, she took the children and removed to California.

This suit was filed in December, 1921. In his evidence plaintiff admits that he was delinquent prior to the summer of 1919, but claims that he reformed at that time. He made a trip to Michigan at great sacrifice and

on his return to Kentucky continued to be true and faithful to his vows. He charges, however that defendant had conceived the design of first procuring all his property and then divorcing him. Having taken the first step she proceeded on their return to put her design into effect, and refused to live with him longer, and undertook to procure evidence for a divorce. He was discouraged by this conduct and did indulge in dissipation; he still loved her, and accompanied her to the office of her attorney, who was a mutual friend, and beseeched him to use his influence with her not to procure the divorce; this proving unavailing he told them that if the petition was based on the ground of adultery he would fight the suit, otherwise not; that the attorney suggested a contract settling the property rights; that he did not know the law relating to the restoration of property in divorce cases and asked the lawyer why there should be a settlement as he had deeded his wife all his property, and that the attorney told him it was necessary to have a settlement in all divorce cases; that in ignorance of the law and relying upon that statement he executed the contract. He admits that this was written in duplicate and that he carried a copy to his office and kept it for two or three days before signing it. He further admits that he had retained a lawyer to contest the divorce suit if filed on the ground of adultery, but says he did not consult him with reference to this contract. After the divorce he voluntarily paid her nearly $1,500.00 for the maintenance of the children, and in so doing consumed practically his entire estate. He did after the divorce procure from her a diamond ring which he had given her, and which he has since sold; he also sold his automobile and sold out his interest in the loan business, this being necessary in order to meet the demands placed upon him; that his wife had removed from the jurisdiction of the court, carrying her children with her; that she was preparing to sell the property that he had conveyed to her when she was a member of his family and to dispose of same without any protection to the infant children.

On the contrary, her evidence is to the effect that she received the property in good faith as the only means of saving it for their family; that for the sake of the children she had borne disgrace, ignominy and brutality. The husband was guilty of bestial conduct after his return from Michigan and in self-respect she could bear it no longer and did determine on a divorce; that the written

contract was not drawn in contemplation of divorce but in contemplation of a separation already existing. It was drawn in duplicate and a copy given to each of the parties and carried away by them; that two or three days afterwards, and after it had been fully examined, they met again and signed it. She was fully prepared to prove the charge of adultery as well as the other charges named; she did desist from making this charge, not on account of the written contract, but because her husband informed her lawyer and herself that he was not going to contest the other grounds, and she did not care to unduly expose her family to the humiliation that the charge would entail. She did live in Lexington for a year, where her husband visited their children at her home, but that he assaulted her on different occasions, in one of which she had to leave and go to a neighbor's for protection, and thinking it dangerous to remain longer she removed to another state. In this she is corroborated by other witnesses.

On these facts it is pleaded and argued first that the written contract of settlement was executed in ignorance of law and under such circumstances that it was constructive fraud upon the plaintiff, and that it should be cancelled and restoration awarded under the statute.

Without reference to the numerous authorities cited in support of the proposition that relief may be had from mistake of law as well as of fact, and of the proposition that where an attorney representing one party undertakes to advise the adverse litigant as to the mutual rights of the parties, he must do so fairly and fully, we think it clear that this case does not fall within either principle.

Here the highly reputable attorney who represented the wife did not undertake to advise the husband as to his legal rights. He was not asked to do so at that time. All parties understood that he (appellant) had an attorney of his own with whom he had consulted in reference to the proposed suit for divorce. A duplicate contract was given to each of the parties. Appellant admits he understood its terms; he also had ample time and opportunity to consult his attorney as to his legal rights. This evidence is insufficient to authorize a cancellation of the contract on the ground of fraud or mistake. Vanover v. Justice, 174 Ky. 581; Ashmore v. Hannen, 157 Ky. 440.

It is also claimed that the consideration for the settlement was illegal in that it was made to expedite the di-

vorce proceedings, the argument being that plaintiff agreed not to contest the divorce proceeding in consideration of defendant not relying on the ground of adultery.

We see nothing in this. The wife had several grounds of divorce and could select any one or more of them. The husband did not care to contest the divorce proceedings unless adultery was charged, and if she chose to spare him as well as herself the humiliation of such family exposure and based her suit on other grounds, such conduct is neither illegal nor vicious and there is no evidence that this feature entered into the settlement or formed any part of the consideration for it.

Such settlements, if fair and made after final separation or in contemplation of a permanent separation, have uniformly been upheld by this court. Hoskins v. Hoskins, 201 Ky. 208; Flood v. Flood, 5 Bush 167; Williams v. Gooch, 3 Metc. 488; Johnson v. Johnson, 96 Ky. 392; Moayan v. Moayan, 114 Ky. 865; Hoffman v. Hoffman, 153 Ky. 445; Edleson v. Edleson, 179 Ky. 300, and in subsequent divorce proceedings such settlements are not affected by the order of restoration provided by statute. (Same citations.)

Eddleson v. Eddleson, *supra,* cited to the contrary, is in line with the other cases. True, in that case the parties had agreed for a divorce to be granted and the attorney's fee to be paid by the wife, and this was held to be illegal, but it was also held that the remainder of the contract was based upon a proper consideration and could be segregated therefrom and it was upheld.

We conclude that the settlement was valid, and the judgment of the lower court upholding it and denying restoration of the property therein settled upon appellee was proper.

After the judgment for divorce appellee executed a mortgage upon the Lexington real estate to secure a loan obtained from the Equitable Life Insurance Company. Appellant sought to have this set aside. The court refused to do this and, on the contrary, entered a judgment enforcing the company's lien. The above conclusions render a discussion upon this question unnecessary. As the legal owner of the property she could encumber it with a valid lien and she is not complaining of the court's action.

Wherefore, perceiving no errors in the record, the judgment is affirmed.