## Sparks v. Sparks.

(Decided June 25, 1926.)

### Appeal from Muhlenberg Circuit Court.

1.   Divorce—Statute of Another State Prohibiting Party Obtaining Divorce on Notice by Publication from Remarrying Within Two Years Held Not Applicable to Divorce Obtained in this State on

Grounds Arising in Other State (Burns' Ann. St. Ind. 1914, Section 1065).—Burns' Ann. St. Ind. 1914, section 1065, prohibiting party obtaining divorce on notice by publication in newspaper from re-marrying within two years, applies only to citizens of Indiana and to divorces granted in that state, and does not apply to wife who obtained divorce in Kentucky on grounds arising in Indiana, and her subsequent remarriage in Indiana within two years was valid.

2. Husband and Wife—Separation Agreements, if Fair, Reasonable, and Equitable, are Upheld, but will be Closely Scrutinized.—Sepa-ration agreements untainted by fraud, undue influence, or coercion, if fair, reasonable, and equitable, considering circumstances of par-ties when made, are upheld, but will be closely scrutinized by court of equity.

3. Husband and Wife—Separation Agreement, Whereby Wife Waived all Her Rights Growing Out of Marriage Relation, Held Unfair.—Where marriage was entered into in good faith by both parties, separation agreement executed two days thereafter, in which wife waived all her rights growing out of marriage rela-tion, held so unfair as to warrant belief it was executed under influences affecting her freedom of will.

4. Divorce—Award of $600.00 alimony and $100 counsel fees to wife suing for divorce not excessive, where husband, 25 or 26 years old, earned $175.00 a month, and owned property.

WILKINS & SPARKS for appellant.

W. S. HOLMES for appellee

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant and defendant below, Kenneth Sparks, and the appellee and plaintiff below, Fairlie Sparks, were married on September 21, 1924, at Rockport, Indiana. The defendant at the time resided with his mother in Central City, Kentucky, and the plaintiff resided with her parents in the country a short distance from Central City.

For more than a year prior to the marriage the de-fendant had called on the plaintiff regularly several times a week and on more than one occasion had expressed to a third person a desire to marry her.

On September 20, 1924, defendant suggested to Ben-nie Dukes, who was engaged to marry Lila Roberts, a niece of plaintiff, that the two couples drive to Green-ville, Kentucky, and marry. Dukes told him that he and Lila could not marry in Greenville as she was not twenty-one years of age and a license would not be issued there without her father's consent. Defendant then suggested

that they drive to Rockport, Indiana, where a license could be procured. They accordingly drove to Rockport in Duke's automobile, the defendant driving the car one-half of the distance. They arrived in Rockport a few minutes before midnight and defendant went to a barber shop or restaurant and called the clerk over the telephone and arranged to meet him at the clerk's office and secure the license. He also called up a minister, who consented to perform the marriage ceremony.

The licenses were procured, the two couples were married a few minutes after midnight and they' returned to Central City, arriving there at 5 a. m. on September 21, 1924. They drove to the home of plaintiff's parents, where the two young women were left, and defendant and Dukes returned to their respective homes in town.

On the afternoon of that day, which was Sunday, defendant visited plaintiff at her parents' home, remaining two or three hours. On Monday he again visited her and they went driving. On Tuesday, September 23, 1924, defendant asked plaintiff over the telephone to meet him in Central City. Dukes, who was then living at her parents' home, drove her into town, and they met defendant in front of the post office. Plaintiff and defendant went off together and appeared later in the day in Greenville, Kentucky, and in the office of defendant's attorney. His attorney prepared an agreement which both signed.

This agreement is very lengthy, but in substance recites that at the time the marriage license was procured and the marriage ceremony performed at Rockport, Indiana, Kenneth Sparks was under the influence of intoxicating liquor and the parties had no intention of getting married until a very few minutes before the license was procured; that the agreement to get married was merely a jest and would not have been entered into or carried out except for the fact of Kenneth Sparks being under the influence of intoxicating liquor; that the parties desired the marriage to be set aside and held for naught and that they did not desire to live together as man and wife.

In consideration of these matters, which are set out in a long preamble, the agreement provides that Fairlie Sparks releases Kenneth Sparks from all obligations of future support for herself and that she releases and relinquishes unto him, his heirs and assigns, all rights or claims by way of dower in the real property then owned

by Kenneth Sparks or thereafter acquired by him and all rights or claims to a distributive share of his personal estate, then owned or thereafter acquired, and all claims for an allowance for her support. The agreement further provides that Fairlie Sparks shall not in any manner incur or contract any debts on the credit of Kenneth Sparks, and that, in case an action for a divorce should thereafter be instituted by either party, she shall not ask or apply for any allowance as alimony, either temporary or permanent. By the terms of this agreement, Kenneth Sparks also releases all rights or claims, growing out of the marriage relation, that he might have in the property of Fairlie Sparks.

After the agreement was signed the visits of defendant to plaintiff's home ceased. It is admitted that they never lived together as man and wife.

On October 4, 1924, Fairlie Sparks instituted suit in the Muhlenberg circuit court against Kenneth Sparks, alleging that, without fault on her part, he had abandoned her and had refused to make any provisions for her support. She prayed for alimony and that maintenance be allowed her pending the action.

Defendant answered, denying the abandonment and setting up the written contract of September 24, 1924, and pleading estoppel.

He later filed an amended answer in which he alleged the plaintiff had been previously married to Everett Davis and that on January 17, 1924, she filed a petition in equity in the Muhlenberg circuit court, styled Fairlie Davis v. Everett Davis, praying for divorce and setting up grounds for divorce under the laws of the state of Indiana, the cause of divorce having occurred in Indiana. A copy of the record in that case was filed as a part of the amended answer, which disclosed that Everett Davis was proceeded against as a nonresident defendant and a divorce was granted to Fairlie Davis on May 15, 1924, after the warning order attorney had filed his report. He further alleged that the marriage solemnized in the state of Indiana on September 21, 1924, was void because the then Fairlie Davis could not, under the statutes of Indiana regulating divorces, be married to another on account of the time being less than two years since she was granted a divorce from her former husband, Everett Davis. The Indiana statute referred to provides that "parties against whom a judgment of divorce shall hereafter be rendered, without other notice than publication

in a newspaper, may, at any time within two years after the rendition of such judgment, have the same opened, and be allowed to defend as well on the granting of the divorce as in relation to the allowance of alimony and the disposition of property; and until the expiration of said two years, it shall not be lawful for the party obtaining such divorce to marry again; which shall be stated in the decree of the court.''

The plaintiff filed a reply, the second paragraph of which alleges that the defendant, through fraud, misrepresentation, overpersuasion and duress induced her to sign the contract prepared at Greenville on September 24, 1924, and that by deception defendant induced her to get in a car with him and go to Greenville; that after learning his purpose she protested but was intimidated by him and signed the contract against her will, and that she had no opportunity to consult her parents or an attorney concerning her rights.

Proof having been taken and the case submitted, the lower court gave the plaintiff judgment for the sum of $600.00, her costs and $100.00 attorney fee.

Reversal of this judgment is asked because, (1) the marriage in Indiana was void, (2) the separation agreement of September 24, 1924, was valid and binding upon both of the parties, (3) the amount of alimony allowed is excessive.

1.   The Indiana statute governing divorce and remarriage, being section 1065 of Burns' Revised Statutes of Indiana, applies only to citizens of Indiana and to divorces granted in that state.   It is conceded that the decree of divorce entered in the Muhlenberg circuit court on May 15, 1924, in the action of Fairlie Davis v. Everett Davis was final and valid in Kentucky.   The prohibition provided for in the Indiana statute was not stated in the decree of the court nor could it have been made a part of the decree under our statutes.   The validity of a divorce granted in another state after notice by warning order is recognized in Indiana.   Hiblish v. Hattle, 145 Ind. 59, 44 N. E. 20.   It follows that the marriage of plaintiff and defendant in Indiana was valid.   Phillips v. Madrid (Me.), 12 L. R. A. 862.

2.   The proof shows that the reasons set out in the preamble to the separation agreement to justify its execution were without any foundation in fact.

The marriage had been long contemplated and desired by the defendant and took place at the time and place it did at his suggestion and after he had made all arrangements therefor. There is absolutely no proof that he was intoxicated at the time or that the marriage was considered a mere jest. On the contrary, the proof tends to show conclusively that the marriage was entered into in good faith by both of the parties.

Separation agreements are upheld when untainted by fraud, undue influence or coercion and when the terms are fair, reasonable and equitable, considering the circustances of the parties at the time they are made. In Parsons v. Parsons, 62 S. W. 719, 23 R. 223, this court said: "Such agreements, when fairly made, contravene no public policy, and are not void. While the court will not suffer the wife to be overreached by the husband, or sustain a contract prejudicial to her, obtained by him while she is under his domination, this rule does not apply where they are separated and are dealing at arm's length."

In Luttmer v. Luttmer, 143 Ky. 844, 137 S. W. 777, cited as an authority for the reversal of this case, the wife, under the agreement, received absolutely one-third of the husband's estate and the contract was fully understood and consented to by her, who in adjusting the matter had the assistance and advice of her brother, an attorney-at-law, and other members of her family.

In Cisco v. Cisco, 178 Ky. 745, 199 S. W. 1057, also cited, the wife received a substantial sum under the agreement and she was represented by an attorney and fully advised as to her rights.

Separation agreements will be closely scrutinized by courts of equity and will not be upheld in favor of the husband against the wife if not fair and just to her under all the circumstances. Kline v. Kline, 32 R. 492, 105 S. W. 1189.

Assuming in this case, as we must in view of the evidence, that the plaintiff entered into the marriage in good faith, the agreement is neither fair, just nor equitable. There is no proof that the plaintiff owned any property or had any income. She was called upon suddenly and unexpectedly to sign a contract in which she waived all rights growing out of the marriage relation without any consideration to her. The terms of the contract are so unfair as to warrant the belief that it must

have been executed under influences which affected that freedom of will so essential in every contract between husband and wife. It is due to the attorney who represented the husband to state that his conduct was above reproach. He only put in writing what he believed to be the final and considered wishes of the parties.

3. It is finally urged that the amount of alimony is excessive. The plaintiff in her petition alleged that defendant owned property and was earning from $175.00 to $200.00 a month. The defendant in his answer denied that he was earning more than $100.00 a month, but did not deny that he owned property. The proof shows that he is a young man 25 or 26 years of age and that he earns $175.00 a month. The value of the property alleged to be owned by him does not appear in the record. In Muir v. Muir, 133 Ky. 125, 92 S. W. 314, in discussing the basis for the allowance of alimony the court said: "'In estimating the allowance of alimony, there is no fixed standard. The matter is within the sound judicial discretion of the chancellor. It will be regulated by a number of circumstances that properly enter into the consideration. Among them is the size of the estate of the husband, and its productiveness; his income and earning capacity; his age, health and ability to labor."

In Griffin v. Griffin, 154 Ky. 766, 159 S. W. 597, the court in fixing the amount of alimony to be allowed, took into consideration the probable earnings of the husband from his own efforts and his probable inheritance from his mother's estate, though he owned no estate at the time.

Under all of the facts of this case the amount of alimony allowed by the chancellor appears to be reasonable.

Judgment affirmed.