## Alderson v. Alderson.

(Decided Jan. 20, 1933.)

DELOZIER MOXLEY for appellant.

R. L. PAGE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Florence R. Alderson, and the appellee, Clifford A. Alderson, were married on July 6, 1929. After a stormy married life lasting but a few weeks, Florence R. Alderson on October 4, 1929, instituted suit against her husband for divorce on the ground of cruel treatment. Her plea for an absolute divorce was denied, but she was granted a divorce from bed and board, and was awarded $30,000 alimony and attorneys' fees in the sum of $3,500. An appeal from that judgment was prosecuted to this court and the judgment in so far as it granted a partial divorce and fixed the allowance to her attorneys at $3,500 was affirmed, but was reversed as to the allowance of alimony. Alderson v. Alderson, 240 Ky. 708, 42 S. W. (2d) 928.

On the return of the case to the lower court, Clifford A. Alderson filed a pleading styled an "amended and supplemental answer, counterclaim and cross peti-

tion," in which he sought an absolute divorce on the ground of abandonment. At a hearing held on January 20, 1932, the appellant was granted an allowance pendente lite of $100 per month. The hearing was had on a rule issued against the defendant requiring him to show cause why he should not pay to the plaintiff the sum of $400 per month during the pendency of the action.

When the litigation began in October, 1929, the defendant was possessed of considerable wealth, and had a large income, but when the hearing was had on January 20, 1932, it appears that his sole income was a salary of $2,400 paid to him by the Standard Automobile Company, a corporation in which he owned almost one-half of the stock. The corporation had lost $30,000 during the year 1931. His estate had materially depreciated in value, and his investments had ceased to pay any return.

Appellant had been represented from time to time by various attorneys, and on January 20, 1932, her attorney of record was Mr. John P. Fleming. Two days after the order allowing her $100 per month pending the action was entered Mr. Tom M. O'Connell, an attorney at law and appellant's brother-in-law, went to the office of Mr. Robert L. Page, one of appellee's attorneys, and suggested that the property rights of the parties should be settled. Mr. Page prepared a contract which recited that the plaintiff, Florence R. Alderson, for a valuable consideration, receipt of which was acknowledged, waived all claims for alimony and relinquished any and all claims to dower or any interest whatsoever in and to the defendant's property, and agreed to pay her attorneys out of the money paid to her by the defendant. This contract was mailed to Mr. O'Connell, who was to obtain the signature of his sister-in-law. He delivered the writing to appellant, who retained it for more than a week, and on Monday, February 1, 1932, at her request, a conference with the defendant was held at the office of Mr. Page. The appellant and her brother-in-law, Mr. O'Connell, the appellee and his attorneys, Mr. Leon P. Lewis and Mr. Robert L. Page, were present at this conference. The appellee refused to pay more than $1,000 and on the following day the contract was delivered to Mr. Page by Mr. O'Connell. It had been

signed by appellant and by Mr. O'Connell as her attorney. Up to this point Mr. John P. Fleming, the attorney of record for appellant, knew nothing of the negotiations for a settlement. Mr. Page insisted that the contract must be signed by Mr. Fleming, as he was the attorney of record, and since it provided that appellant's attorneys should be paid by her. The contract was taken to Mr. Fleming's office by Mr. O'Connell and Mr. Page, and was signed by him. On the day the contract was signed and delivered, appellee paid to appellant $1,000. On February 6, 1932, the contract which had been signed by appellant, by John P. Fleming, and Tom M. O'Connell, as her attorneys, and by Robert L. Page, attorney for defendant, was filed in the proceeding.

On March 26, 1932, Mrs. Alderson filed an amended petition in which she asked for an absolute divorce on the grounds of abandonment and cruel and inhuman treatment. In the same pleading she alleged that the settlement made between her and her husband on February 4, 1932, had been obtained by the defendant by duress and fraud, and at a time when she was ill and not in any mental condition to enable her to investigate the facts or to ascertain her rights or to know the effect of the settlement, and she asked that the settlement be canceled and held for naught. She later tendered into court the $1,000 that had been paid to her under the settlement. She took additional proof on the questions of abandonment and her husband's alleged cruel treatment of her, and on the submission of the case the chancellor entered a judgment granting her an absolute divorce, but upholding the contract of settlement. From that judgment Mrs. Alderson has appealed.

It is her contention that the settlement was unfair to her and should have been set aside, and she relies chiefly upon the following cases in support of her contention: Sparks v. Sparks, 215 Ky. 508, 284 S. W. 1111, 1113; McGuffin v. Chapman, 212 Ky. 579, 279 S. W. 987; Middleton v. Middleton, 207 Ky. 508, 269 S. W. 552; and Edleson v. Edleson, 179 Ky. 300, 200 S. W. 625, 2 A. L. R. 689. In each of the cases relied upon, however, the settlement was set aside because it was made while the wife was under the domination of the husband and when she was not represented by an attorney; or

by any other person in whom she had confidence and with whom she could consult, and in each instance the settlement under the facts was grossly unreasonable and unfair.

The well-established rule applied by the courts where separation agreements are attacked is thus stated in Sparks v. Sparks, supra:

> "Separation agreements are upheld when untainted by fraud, undue influence, or coercion, and when the terms are fair, reasonable, and equitable, considering the circumstances of the parties at the time they are made. In Parsons v. Parsons, 62 S. W. 719, 23 Ky. Law Rep. 223, this court said: 'Such agreements, when fairly made, contravene no public policy, and are not void. While the court will not suffer the wife to be overreached by the husband, or sustain a contract, prejudicial to her, obtained by him while she is under his domination, this rule does not apply where they are separated and are dealing at arm's length.' "

In the instant case the appellant and appellee had been separated more than a year and a half when the contract was entered into, and they were dealing at arm's length. Appellant had possession of the contract for more than a week before she signed it, and had ample opportunity to consult with her attorneys and with members of her family, and to inform herself as to her rights. Clearly she was not under the domination of her husband at the time she signed the contract, and there is no evidence tending to show that it was obtained by fraud or duress. She was advised by her brother-in-law, an attorney at law, and, while some point is made of a statement claimed to have been made by one of appellee's attorneys during the conference at Mr. Page's office as to the effect of the opinion of this court on the first appeal, the contract was not signed and delivered on that day, and she had ample opportunity to have that question investigated.

We are convinced that appellant was not overreached and that the chancellor properly refused to rescind the contract.

Judgment is affirmed.