## Dodd v. Dodd et al.

May 26, 1939.

J. VERSER CONNER for appellant.

A. C. VANWINKLE and J. H. GOLD for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming in part and reversing in part.

The appellee, Agnes B. Dodd, the plaintiff below, will be referred to in this opinion as the plaintiff, and the appellant, John L. Dodd, the defendant below, will be referred to as the defendant.

Mr. and Mrs. Dodd were married in 1918, and they had one child, a son, who died several years before their separation, March 29, 1934. Mr. Dodd was addicted to the use of liquor and after the death of his son he became so dissipated he attempted to destroy himself by taking iodine, March 29, 1934, and on that night about 2 o'clock, his wife and father-in-law put him in the Louisville Neuropathic Sanatorium where he was confined until April 12, 1934, with a male nurse constantly in attendance. The iodine so burned Dodds throat he could not take food or water for several days, and this, coupled with his prolonged and excessive use of liquor, put him in bad shape mentally and physically. He left the Neuropathic Sanatorium April 12th, and went to the home of a relative in Louisville, remaining there until April 23rd, when he entered the Cincinnati Sanatorium where he remained for some two weeks, and from there he went to Brown's Camp, located in New York on the Hudson. to rehabilitate himself.

During the interim between leaving the Louisville institution and entering the one at Cincinnati the defendant went to the office of his cousin, Hon. Allen P. Dodd,

a prominent and highly respected attorney in Louisville, and informed him he wanted a divorce from his wife. He had no grounds upon which to obtain a divorce and as his wife did have, he wanted her to bring the suit, saying he would amply provide for her in a settlement of property rights. Mr. Allen Dodd had the full confidence of Mr. and Mrs. Dodd and he assumed the very difficult role of trying to advise both and to make a fair and equitable property settlement between them. Mr. Allen Dodd was a director in the bank of which Mr. John Dodd was vice-president and he arranged for a six months leave of absence for Mr. John Dodd in order that he might regain his health. Mr. Allen Dodd was somewhat alarmed about the mental state of his cousin and was most anxious to get his affairs arranged to his satisfaction so he might leave Louisville and enter an institution for treatment.

Mr. Allen Dodd had the plaintiff come to his office and told her that her husband wanted a divorce and that he would enter into a contract with her settling their property rights. She told Mr. Allen Dodd she did not desire a divorce, to which he replied her husband was insistent upon a divorce and was going away for treatment and there would be no property settlement unless she agreed to sue for divorce. The testimony is clear the husband was insisting upon a divorce and Mr. Allen Dodd was insisting upon a settlement of property rights and putting his cousin's property in trust, evidently hoping the trust agreement would insure Mrs. Dodd a living and would prevent Mr. Dodd from squandering his estate.

Mrs. Dodd agreed to sue her husband for divorce and Mr. Allen Dodd drew a separation agreement dated April 18, 1934, which recited the parties had separated and each desired a settlement of property rights. Mr. and Mrs. Dodd signed this separation agreement, which in substance provided her husband would pay her $200 per month alimony and maintenance during her life or until she remarried, so long as he held his position with the bank which paid him $5,000 per year; should he lose his position, or get reduced in salary, this maintenance would be subject to readjustment by the mutual consent of the parties. To secure these monthly payments the husband put in trust with the Lincoln Bank and Trust Co., trustee, under separate agreement made with it April 18, 1934, approximately $45,000 in securities and

his life insurance policies in the neighborhood of $20,-000. The separation agreement further provided Mr. Dodd would convey his wife their home on Everett Avenue, which the record shows was worth about $12,500 and he agreed to put it in suitable repair and in doing so he spent $1,390 on the house; that he would transfer a De Soto automobile to his wife, which he did; and it was further agreed after he had regained his health and returned home, he and Mrs. Dodd would divide the household effects, she taking such parts thereof as she might need for her comfort, the balance, including Mr. Dodd's heirlooms, should be stored in the Safety Transfer and Storage Company of Louisville, which was to issue a receipt for same to the trustee. It was further provided in this separation agreement, should the wife survive the husband and remain unmarried, then upon his death the trust should terminate and the trustee should convert the securities into cash and pay Mrs. Dodd one-third of the proceeds; that the trust created could be terminated only by the mutual consent of the parties or upon Mr. Dodd's death. It will be noted there is no obligation whatever put upon Mrs. Dodd by this separation agreement and she did not agree therein to sue her husband for divorce.

On Oct. 27, 1934, Mr. and Mrs. Dodd entered into a supplemental agreement by which they divided their household effects. By this agreement she retained all items of furniture purchased since their marriage, and in addition thereto she took practically all the household effects her husband had at the time of their marriage and which he had inherited from his mother. The agreement contained a provision to the effect if Mrs. Dodd remarried, or at her death there would be returned all the household property taken by his wife which belonged to the mother or ancestors of her husband. The fourth paragraph of this supplemental agreement reads:

"Simultaneously with the execution of this agreement and the division of the property as herein provided, the second party will file a petition against the first party for divorce, the first party agreeing to bear all costs incident to said proceedings for divorce, including any counsel fees, or, to state it differently, agrees to, in case of the filing of said divorce petition, and in addition to all other matters covered by this stipulation, and said

former stipulation,. be responsible for any costs or fees incident thereto.''

On Dec. 6, 1934, through Mr. Allen Dodd as her attorney, Mrs. Dodd filed suit in the chancery division of the Jefferson Circuit Court for divorce. The husband entered his appearance, no depositions were taken, but Mrs. Dodd and her attorney testified in person before the chancellor, who on the next day, Dec. 7, 1934, granted her an absolute divorce. Neither of the agreements settling the property rights of the parties was made a part of the divorce judgment, nor are they referred to therein. Mr. Dodd carried out all the terms of the separation agreement and paid $200 per month to Mrs. Dodd up to August 1, 1936, at which time he ceased to make these payments and on Jan. 11, 1937, she filed this action in equity for the unpaid monthly maintenance for the five months from August through December, 1936, or $1,000. She made the Lincoln Bank and Trust Company, trustee, a party defendant asking the court to direct it to pay her $1,000 from the cash in its hands under the trust agreement; or if it did not have sufficient cash to pay this sum, that the court order the trustee to sell sufficient of the securities that it held to do so. Defendant filed an answer and counterclaim against Mrs. Dodd, making this pleading a cross petition against the trustee. He pleaded he was confined in a sanatorium for treatment of a mental affliction until just a few days before he entered into this contract; that by reason of his mental and nervous condition and of the representation made to him, he did not understand the nature and effect of the contracts and did not appreciate the consequences of signing same; that he believed and understood such agreements in the contracts were temporary and not permanent in character and he signed same with the understanding and belief they could be terminated by either party at any time upon his making a fair and equitable settlement with the plaintiff. He further pleaded his salary was $5,000 per year, and his annual net income from his securities after paying the trustee's fees, life insurance premiums and taxes, amounted to $1,300; that he had paid his wife monthly allowances in the aggregate sum of $5,500 in addition to conveying her the home, and that she had up until the filing of this suit received from him in the aggregate $26,000; that she has a position paying her $1,500 per year; that she had no property at the time of

their marriage and she did not help him accumulate his estate, practically all of which he inherited from his father prior to their marriage; that the separation agreements entered into with his wife are so unfair, harsh and inequitable as to be unenforceable. Defendant offered to file an amended answer, counterclaim and cross-petition alleging he entered into the separation agreements in consideration of Mrs. Dodd agreeing to institute divorce proceedings against him and such agreements between the parties facilitated divorce, and he asked the court to declare such separation agreements void. The chancellor refused to let this amendment be filed, holding it was inconsistent in the defendant to plead his mental and nervous condition was such he did not understand the separation agreements entered into with his wife and by this amendment to plead they were contracts to facilitate divorce. The chancellor erred in not allowing the defendant to file this amendment as it is obvious there is nothing inconsistent in the two pleadings. However, it was not necessary for defendant to plead these contracts facilitated divorce and were void as being against public policy—such a defense need not be pleaded as the court sua sponte will refuse to enforce a contract against public policy. Bishop v. Bishop, 238 Ky. 702, 38 S. W. (2d) 657; Terry v. Rose, 251 Ky. 314, 64 S. W. (2d) 909. Mrs. Dodd's reply traversed the material allegations of the answer and counterclaim and contained an affirmative plea that Mr. Dodd had no mental or physical disability when he entered into the supplemental agreement, October 27, 1934, and was under no such disability when he paid her $200 per month until August, 1936, and his action so ratified and confirmed the separate agreements as to now estop him from denying he did not understand them at the time entered into, or that they were too harsh or inequitable to be enforced. The pleadings were completed by a rejoinder and a sur-rejoinder.

The chancellor referred the actions to Hon. Charles T. Ray, commissioner, to hear evidence and to make certain findings and to report to the court. The commissioner heard quite a bit of evidence and then made a full and complete report to the chancellor wherein he found when John Dodd entered into the separation agreements he was laboring under the impression he was making a temporary and not a permanent settlement of property rights; that Dodd was not mentally competent to

execute these contracts and same were so harsh and inequitable they should be set aside upon such conditions as the chancellor might impose upon Dodd as to a just division of his property with his wife; that Dodd had not ratified such contracts because he was under the impression while performing them they were only temporary and not permanent; and that the securities held by the trustees were impressed with a lien to secure Mrs. Dodd's monthly allowance of $200 but that the trust agreement should be terminated and a property settlement made between the parties upon a fair and equitable basis.

Exceptions were filed to the commissioner's report by Mrs. Dodd. The chancellor rendered a most unusual judgment, reciting he had not read the proof, nor the commissioner's report, therefore, he declined to pass upon the exceptions filed thereto; but upon an independent consideration of the contracts and the trust agreement, he adjudged them to be unconscionable and inequitable and declined to enforce them. He adjudged their cancellation upon the condition the defendant deliver to Mrs. Dodd one-half of the securities held by the trustee, or in lieu thereof to pay her $19,503.81 within 30 days; that Mrs. Dodd recover of the defendant $4,200, the amount accrued to the date of the judgment on the $200 monthly payments; but in the event defendant divided the securities with her, or paid her $19,503.81, the $4,200 would be satisfied. The judgment directed the balance of the securities and all insurance policies and the personal effects of Mr. Dodd's mother to be returned to him by the trustee and that the cost of this proceeding, including all fees due trustee, be paid equally by the plaintiff and defendant. Defendant excepted to this judgment and the plaintiff excepted to all the judgment but that part directing defendant to pay her $4,200. The defendant is here on appeal and the plaintiff on cross-appeal. Patently the judgment is erroneous, but no good can come from reversing this case on a technicality and sending it back to the chancellor to read the record and the commissioner's report and to rule on the exceptions filed thereto. Therefore, we will pass over the error committed by the chancellor and go to the merits of the case.

The first question presented is whether or not the separation agreement of April 18, 1934, and the supplemental agreement of Oct. 27, 1934, facilitated divorce

and are therefore void as contravening public policy. The separation agreement does not mention divorce but the testimony of Mrs. Dodd and Mr. Allen Dodd clearly shows the sole consideration for such agreement was that Mrs. Dodd would institute divorce proceedings against her husband who desired a divorce but had no grounds. Paragraph four of the supplemental agreement as heretofore quoted contains a provision Mrs. Dodd shall bring suit for divorce simultaneously with the execution of this contract. This court has many times upheld equitable and fair agreements settling property rights between married persons who at the time were separated. Alderson v. Alderson, 247 Ky. 12, 56 S. W. (2d) 534; Middleton v. Middleton, 207 Ky. 508, 269 S. W. 552, and cases cited therein. But it is equally well-settled that a contract wherein the parties agree to sever the marital relation or to facilitate divorce is against public policy and void. A man and woman marry by mutual consent but mutual consent will not divorce them. This court said in the case of Edleson v. Edleson, 179 Ky. 300, 200 S. W. 625, 629, 2 A. L. R. 689:

"Hence a husband and wife cannot lawfully enter into a contract for a divorce, and any agreement made by them to facilitate the procurement of a divorce is held to be void and illegal, as contrary to public policy. The contract to facilitate the granting of a divorce is a fraud upon the courts, as they are the only tribunals which are authorized to dissolve the marriage relation, when it has once been established, and then only upon the grounds and for the reasons provided for by law."

See Overstreet v. Barr, 255 Ky. 82, 72 S. W. (2d) 1014. We find the following in 13 C. J. section 406, page 463:

"If the object of a contract is to divorce man and wife, the agreement is against public policy and void. The reason of the repugnance with which the law views all contracts with the purpose of dissolving the marriage relation may be found in its regard to virtue, the good order of society, the welfare of the children as the fruit of the marriage, and the sacred character of the conjugal relation. It will not suffer husband and wife to dissolve of their own accord a contract which is in its nature

indissoluble except so far as the legislative will has allowed it, and then only by the method authorized. To induce a wife to sue for a divorce by a promise on the part of the husband to remunerate her for it, or for a husband and wife to agree that one of them shall bring a suit for a divorce and the other shall not defend, is against the law which recognizes and upholds the sanctity of marriage and is void."

The rule that a contract to facilitate divorce is against public policy is followed in practically all the foreign jurisdictions as will be seen in examining the notes in 44 L. R. A., N. S., 379.

Mrs. Dodd argues she did not desire a divorce, but was compelled by her husband to agree to sue for a divorce before he would make a settlement of property rights with her, and he should not now be allowed to take advantage of his own wrong in forcing her to enter into an illegal contract and thereby escape the burdens that contract placed upon him. There is no force in such an argument. Section 2121, Ky. Statutes, gives the wife a right of action for divorce from bed and board (which is often referred to as an action for maintenance), on any grounds upon which she could obtain an absolute divorce and during the pendency of such action the chancellor may order the husband to pay the wife a sum sufficient to maintain her according to her station in life. Plaintiff's argument reduces itself to this: She did not want a divorce but as her husband had no grounds upon which to sue her for a divorce she was willing to, and did, sell him a divorce. The husband is not taking advantage of his own wrong but the court is refusing to enforce a contract wherein the parties themselves seek to annul the marital status, because such contract is against public policy.

Mr. and Mrs. Dodd carried out their void and illegal agreement and she obtained a judgment divorcing him which is binding on both parties and this court is without authority to review it. Beeler v. Beeler, 44 S. W. 136, 19 Ky. Law Rep. 1936. But we do have the right and authority to pass upon the property rights of the parties because in the action now before us the defendant in his pleadings asked that the separation agreement be declared void and the court adjudge to Mrs. Dodd her fair part of the estate of her husband at the time of their separation.

The evidence shows Mr. Dodd is a banker whose salary is $5,000 per year and for the last several years he has received from the bank an annual bonus of about $1,000. It further shows he owned securities worth $45,893.10 at the time they were put in trust in the spring of 1934. As the income from these securities amounted to slightly over $2,000 per year, we feel safe in saying that such securities will always produce $1,500 per year regardless of business conditions. A conservative figure at which to place the annual income of Mr. Dodd is $7,500. His estate at the time he and his wife separated consisted of the above mentioned securities, his home and household goods which the record shows were of the value of $5,000. We will not consider the automobile as it was of no great value and there is evidence that when Mr. Dodd bought it second-hand previous to the separation he gave it to his wife. It is most difficult to determine with accuracy the value of the household goods, especially that part given to the wife, but for the purpose of this opinion we will value them at $2,000. In this manner we arrive at the value of Mr. Dodd's estate at the time of the separation as being slightly over $60,000. He conveyed his wife his home worth $12,500, expended $1,390 improving it, gave her $2,000 worth of household goods, making an aggregate of $15,890 she obtained from him, which is slightly more than one-fourth of his estate. Mrs. Dodd had no property at the time of the separation and and no earning capacity, although she now has employment paying her $1,440 per year.

Our problem is to determine what additional sum should be allowed Mrs. Dodd as will meet the offer made her by Mr. Dodd in his answer, "as will represent that equitable percent of his total estate to which the plaintiff upon being divorced from him may be adjudged to be entitled." The only method we know to use in arriving at the additional sum due Mrs. Dodd is that used in arriving at the amount of alimony usually allowed a divorced wife. This is not an alimony proceeding, and could not be, since the divorce was granted long before this suit was instituted. Campbell v. Campbell, 115 Ky. 656, 74 S. W. 670, 25 Ky. Law Rep. 53; Hughes v. Hughes, 211 Ky. 799, 278 S. W. 121. Nor are we enforcing any part of the agreement which we have decided is against public policy and is therefore void. Johnson v. McMillion, 178 Ky. 707, 199 S. W. 1070,

L. R. A. 1918C, 244. There is no fixed rule in arriving at the amount of alimony, but courts take into consideration the age, health, social position and earning capacity of both parties; the ability of the husband to pay, as well as the property he has accumulated, the income therefrom, and the treatment the parties have given each other. Lyon v. Lyon, 243 Ky. 236, 47 S. W. (2d) 1072; Emery v. Emery, 264 Ky. 331, 94 S. W. (2d) 634.

Mr. Dodd felt that Mrs. Dodd was entitled to more of his estate than the $15,890 he gave her at the time of the separation, because by the void separation agreement he agreed to pay her $200 per month, and when Mrs. Dodd sued him on that void agreement, which we have refused to enforce, Mr. Dodd sets out in his answer that he wants her to have the same equitable share in his estate that she would be allowed if she were securing a divorce from him. He never withdrew that allegation from his answer. Also, he testified he wanted to pay his wife such additional sum as would give her a fair proportion of his estate. As Mr. Dodd has already given Mrs. Dodd about one-fourth of his accumulated property, and as he wants to pay her a lump sum instead of a monthly allowance from his annual income of about $7500, we have reached the conclusion that he should pay her $10,000. Thus, Mrs. Dodd will receive $25,890 from Mr. Dodd who had an accumulated estate of $60,000 before he settled with Mrs. Dodd, and in addition thereto Mr. Dodd has an annual income of about $7500. Mr. Dodd will not be liable for any sums he is in arrears on the payment of the $200 per month which the separation agreement provided he should pay Mrs. Dodd, since that agreement is void and cannot be enforced.

The judgment will direct that when Mr. Dodd has paid Mrs. Dodd $10,000, the trust will terminate and the Lincoln Bank and Trust Company, trustee, will forthwith deliver to Mr. Dodd the securities and insurance policies it holds as trustee which shall be his to do with as he pleases. The judgment will further recite that the trustee is to release to Mr. Dodd the household effects it has stored in the Safety Transfer and Storage Company warehouse, and it will also direct Mrs. Dodd to return to him his family heirlooms and all such household effects as belonged to his mother or his ancestors. The judgment will further recite should Mr. Dodd desire to pay Mrs. Dodd the $10,000 allowed her herein

from the securities held in trust, the trustee will sell such of these securities as Mr. Dodd may direct and which are sufficient to pay Mrs. Dodd and deliver the proceeds to her. Mr. Dodd will pay all fees due the trustee, but as the judgment of the chancellor is reversed on the appeal and affirmed on the cross-appeal Mrs. Dodd will pay all costs incurred by both parties in this action in this court and the lower court.

The judgment is affirmed on the cross-appeal and reversed on the appeal for the entry of a judgment consistent with this opinion.

Whole court sitting, except Judge Stites.