## Pegram v. Pegram.

February 25, 1949.

Rehearing denied May 13, 1949.

Hughett & Hughett for appellant.

Daniel B. Boone and Henry J. Tilford for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal is by Charles F. Pegram from a judgment vacating a part of a judgment of divorce which incorporated an agreement of the parties settling property rights and fixing alimony and allowances for their children, also from a new award to the wife and children.

The suit was filed by the wife, Dorothy Rose Pegram; the husband entered his appearance, saying he "declines to plead." The original judgment was rendered June 7, 1948. On the thirtieth day thereafter the divorced wife filed a motion to set aside so much of the judgment as pertained to property rights, alimony and maintenance of the children. She charged that she had signed the contract of settlement under duress and through the fraud of her husband. An amended petition sought judgment on the items de novo. In the meantime, twelve days after the judgment of divorce was rendered, the defendant, Pegram, had remarried. The court set aside the part of the judgment that was attacked, and then adjudged that the net proceeds of the sale of the parties' home, $3,718.07, should be equally divided and that the plaintiff recover alimony of $30 a week. The defendant was directed to pay her $15 a week for the support of their children. The award was allowed from the date of the filing of the petition of divorce subject to be credited by $781 received by the wife as the proceeds of the furniture sold pursuant to the contract of settlement.

At the threshold we note material preliminary considerations.

The judgment of divorce settled the issue as to who was responsible for the disintegration of the home. The husband had not denied his cruel treatment and settled aversion to his wife. The right to the divorce establishes also the right to alimony, the need being manifest. Maher v. Maher, 295 Ky. 263, 174 S.W.2d 289; Burke v. Burke, 298 Ky. 292, 182 S.W.2d 786; Furgerson v. Furgerson, 307 Ky. 394, 211 S.W.2d 161.

Children of divorced parents are in a large measure wards of the court, and their welfare is paramount. It is the first duty of divorced parents, particularly the father, to support those for whose existence they are responsible. Therefore, their father's legal responsibility to support them cannot be avoided or diminished by his contract. The court is not bound by any agreement though it is, of course, a proper consideration. Gothard v. Lewis, 235 Ky. 117, 29 S.W.2d 590; Bishop v. Bishop, 238 Ky. 702, 38 S.W.2d 657; Renick v. Renick, 247 Ky. 628, 57 S.W.2d 663. And this matter of maintenance con-

tinues within the jurisdiction and control of the court, subject to modification as circumstances and conditions may demand, for there can be no final judgment as to infant children. KRS 403.070; Beutel v. Beutel, 305 Ky. 683, 205 S.W.2d 489.

As a general rule the exercise of the power of the court to modify a decree for alimony is not affected by the fact that it is based upon an agreement entered into by the parties, for the agreement became merged into the judgment and lost its contractual nature. 27 C.J.S., Divorce, sec. 238d; Hoskins v. Hoskins, 201 Ky. 208, 256 S.W.1; McGuffin v. Chapman, 212 Ky. 579, 279 S.W. 987.

The proceeding opening up the former judgment was begun during the same term of court while the chancellor still had control of it. The court acted upon timely application for a rehearing. KRS 451.130; Sheffer v. Speckman, 305 Ky. 627, 205 S.W.2d 305. It is within the inherent power and discretion of a trial court to set aside a judgment rendered during the term, and the appellate court will not interfere with that action unless it is shown to have been unreasonable or arbitrary, or will adversely affect legal rights of the parties. Gribben v. Gribben, 227 Ky. 96, 11 S.W.2d 998; Equitable Life Assur. Society v. Goble, 254 Ky. 614, 72 S.W.2d 35. This takes the case out of the usual class where there was an independent action or suit to impeach a judgment for fraud or to set aside a separation settlement after the court had lost jurisdiction of the initial case.

Under the foregoing conditions and rules of law the measure of evidence required to vacate the judgment is less than it would be otherwise. Upon this phase of the case, there was full justification.

We reach the point as to whether or not the agreement as to the property rights and alimony should have been confirmed by the court de novo.

Separation agreements are upheld when untainted by fraud, undue influence or duress if the terms are fair, reasonable and equitable, considering the circumstances of the parties at the time they were made. Sparks v. Sparks, 215 Ky. 508, 284 S.W. 1111; Whisman v. Whisman, 228 Ky. 277, 14 S.W.2d 1061. But such agreements

will be closely scrutinized, and the court will not suffer the wife to be over-reached. It will not sustain a contract that is unfair or prejudicial to her when obtained while she is under her husband's domination. Parsons v. Parsons, 62 S. W. 719, 23 Ky. Law Rep. 223; Kline v. Kline, 105 S. W. 1189, 32 Ky. Law Rep. 492; Keach v. Keach, 217 Ky. 723, 290 S.W. 708; Clark v. Clark, 301 Ky. 682, 192 S.W.2d 968; Corrigan v. Corrigan, 305 Ky. 695, 205 S.W.2d 495.

The parties were married very young. They have two children, aged seven and five years. It is apparent that after nine years of married life Pegram had grown tired of his wife and that it was he who really sought relief from the bonds of matrimony. One evening in January, 1948, he told his wife in the presence of her sister that he wanted a divorce and it would look better if she should bring the suit. In this conversation, and others, he had threatened that, if she did not bring the suit, he would do so and would take the children away from her and leave her without anything. This came as a severe shock. Manifestly so. The next morning the parties went to the office of a lawyer who was then representing the husband in a damage suit. Pegram had previously consulted the lawyer about this matter, but his wife had never seen him before. The agreement was then drafted and executed. This was on January 16, 1948. The terms of the paper were that the wife should take such part of the furniture as she desired and that the rest would be sold with their home, which they owned jointly subject to a mortgage; the wife should receive $1,000 from the proceeds as her separate estate; and the balance would be placed in trust for the benefit of herself and children and be disbursed to her at the rate of $100 a month. The parties lived together two or three weeks afterward. In April suit was filed by that attorney for the wife, and the evidence was presented upon interrogatories.

It is clear that at all times the wife greatly desired reconciliation. The attorney had joined in her efforts, but it was without avail. It is due the attorney to say that the record does not reflect any improper or unethical conduct. He had made it clear to Pegram that he was representing his wife in the case. He had only put

in writing what he was advised was the agreement. He had advised the wife, as she testified, that he believed it was a good settlement. It was a good settlement as far as as it went, for it stripped the husband of all the property he possessed. But it ignored the very important factor of sustenance or support after the small fund should be exhausted. It took no cognizance of the husband's earning capacity or his future income. When the property was subsequently sold, the net proceeds amounted to approximately $3,700. After deducting the $1,000 allowed as her separate estate (which was less than she had paid on it) at the end of a little more than two years she and the children would be without support. Pegram had told her that she could trust him as to the future but did not have it put in the contract. Where the husband's estate is small, and an allowance in gross would be inadequate, or inconsistent alimony and maintenance should be based upon his earning capacity and probable future income. A periodical allowance recognizes that the right of maintenance constantly accrues with the passage of time. Current earnings must be shared to provide the daily living of those to whom the father and former husband is responsible.

It is clear that, when the wife executed the agreement, she was suffering under great shock and mental strain. She was under the domination of her husband. He had threatened to deprive her of all alimony and to take the children away from her if she did not consent. The circumstances and conditions were calculated to create a justifiable fear, although it does not appear that there was any foundation in fact or in law by which the threatened end may have been reached. It is true that the husband charged his wife with nagging him not only in their daily lives but for a separation and that she threatened to take the children and everything he had, plus $300 monthly alimony. But she is confirmed by the indisputable fact that he did not provide in the separation agreement nor ask in the divorce suit for the right even to see or visit his children. We believe the agreement was not made freely or voluntarily or with an appreciation by the wife of her rights. Certainly it was unfair and unreasonable in failing to provide for the future support of her children and herself, to which she was entitled. We think the chancellor properly re-

fused to confirm the separation agreement. McGuffin v. Chapman, 212 Ky. 579, 279 S.W. 987; Sparks v. Sparks, 215 Ky. 508, 284 S.W. 1111; Kline v. Kline, 105 S.W. 1189 32 Ky.Law Rep. 492.

In the purchase of the home the wife had paid initially $1,250, which had been given her by her mother, and about $100 later from her own earnings. It appears that the total payment upon the purchase price was only $2,800 although the husband had spent a relatively large sum in improving the property. In awarding the wife one-half of the net proceeds of the sale, approximately $1,350, the court stated that the purchase of the home was a "joint venture." He did not, of course, use the term as a technical one but, rather, that these young people had entered upon the acquisition of the home jointly. She had made contribution through her own work in the home and otherwise. The excess of one-half of the proceeds over the sums actually paid by the wife may be regarded as the equivalent of a lump sum allowance in addition to the amounts to be paid periodically. This is supported by what is right and by legal precedent. Faulconer v. Faulconer, 307 Ky. 850, 212 S.W.2d 322.

It is maintained that the monthly allowances are too large. The husband was employed by a real estate firm on a commission basis. In 1947 he had earned the gross sum of $10,800 but it represented some earnings of the previous year. He was incapacitated in April, 1947, by a serious injury sustained in an automobile accident. During the first six months of 1948 his net earnings, after deducting taxes withheld, were approximately $1,800. However, undoubtedly his capacity was lessened on account of his accident and litigation, both by reason of it and the divorce proceedings. The appellant testified that his average net earnings for five years had been $4,000. We construe this to be the amounts after deducting income and social security taxes. Upon this and other evidence the commissioner of the court regarded the defendant's earning capacity to be from $7,000 to $8,000 per year and recommended the allowances which were confirmed by the court, namely, $30 a week for the former wife and $15 a week for the two children. This is but $2,340 a year.

There is no need to review the circumstances which affect the allowance of alimony and maintenance. However, it may be noted that on one side is the need of the divorced wife and the children and on the other a substantial earning capacity. It appears that at some period in the past she was employed as a clerk in a store, but now the care of her children must be considered. Allowances to her and to them cannot be based upon the assumption that relatives will furnish them a living. Doubtless the health and physical condition of the young man have been restored. Though he has again assumed the obligations of a husband, his remarriage does not relieve him of his legal and moral obligations to his first family. Fisher v. Fisher, 237 Ky. 823, 36 S.W.2d 635.

The amount of the award was within the discretion of the chancellor, and we are not persuaded that it is too much. Of course, the amount of periodical payments is subject to modification if future circumstances and conditions may warrant. Glenn v. Glenn, 255 Ky. 422, 74 S.W.2d 472.

The appellant submits that the judgment is erroneous in allowing alimony and maintenance from the date the petition was filed because such sums were not asked for therein. The plaintiff prayed for the custody of the children and for "all proper relief to which she may appear entitled." There was a specific prayer in the amended petition filed thirty days after the first judgment. When the agreement was rejected, it was proper to regard the prayer of the amended petition as relating back and as being covered by the general prayer for "all proper relief."

The judgment is affirmed.