**POOR et al. v. LOGAN et al.**

Court of Appeals of Kentucky.

Oct. 17, 1952.

Doolan, Helm, Stites & Wood, Louisville, Charles L. Vaughan, Lafayette, Ind., for appellant.

Woodward, Hobson & Fulton, Lorenzo K. Wood, Louisville, for appellees.

CULLEN, Commissioner.

The first wife of Robert S. Logan, and the two children of his first marriage, are appealing from a judgment in favor of Robert, his second wife and the child of his second marriage, which set aside as invalid and unenforceable certain portions of a property settlement agreement entered into between Mr. Logan and his first wife prior to their divorce.

In 1935, after having been married 23 years, Robert S. Logan and his wife Hester found that they no longer could live together in harmony. At that time Robert was employed by the Logan Company, a Louisville corporation, which was controlled by his father, W. Hume Logan. Robert owned 267 shares of stock in the Logan Company, and his only other property of any value consisted of a residence worth $12,000, which was subject to a mortgage. There was evidence that the stock, in 1935, was worth from $45 to $50 per share. The two children of the marriage, Robert, Jr. and Charles, were respectively 22 and 19 years of age at the time of the separation.

On September 7, 1935, Robert and Hester entered into a separation agreement, the main provisions of which were:

1. Robert agreed to turn over to Hester 227 shares of Logan Company stock, retaining, however, the voting power and the right to one-half of the dividends during his lifetime. Out of his share of the dividends, Robert agreed to pay one-half of the educational expenses of the son Charles, for a period not to exceed three years.

2. Hester agreed that *at her death* the 227 shares of stock, and 123 additional shares she owned in her own right, "and all other Logan Company stock then in her name," would be divided equally between the two sons.

3. Robert agreed that *at his death* the 40 shares of stock retained by him, "and all other Logan Company stock in his name at his death," would be divided equally between the two sons.

4. Robert agreed to pay Hester $150 per month so long as she did not remarry.

5. Hester surrendered all rights to the family residence.

In 1937, Robert and Hester were divorced. The separation agreement was not incorporated in the divorce judgment, but it apparently was understood that the property rights were settled by the agreement. A few months after the divorce, Hester married Dr. Poor, and moved to California, and Robert married his present wife, Ruth. A son later was born to Robert by Ruth.

From the time of the separation agreement in 1935 to January 1949, a period of more than 13 years, the terms of the agreement were fully performed. Robert was paid one-half the dividends on the 227 shares of stock which had been turned over to Hester, and he paid his share of the educational expenses of the son Charles. He also paid the sum of $150 per month to Hester until she married Dr. Poor.

In October 1948, Robert's father died, and by the terms of his will Robert was to receive 190 shares of his father's stock in the Logan Company.

In January 1949, Robert brought this action against Hester and their two sons, seeking to have the separation agreement canceled and set aside. The Logan Company was made a nominal defendant. At the time of the action, Robert owned outright 11 shares of Logan Company stock in addition to the 40 he retained under the separation agreement; 163 more shares were held in trust for him; and he expected to receive 190 more from his father's estate. There had been a substantial increase in the value of the stock since 1935.

Robert's action sought to set aside the separation agreement on the grounds that it was procured by fraud; that it was executed under duress imposed by Robert's father; that it was intended to be effective

only while the parties remained husband and wife; and that it deprived the second wife and the child of the second marriage of their rights and therefore was against public policy.

The chancellor found that there was no basis for the claim of fraud on the part of Hester in procuring the execution of the agreement; that if there was any duress exerted by Robert's father, Robert was estopped from seeking relief because he waited more than 10 years before attempting to set the agreement aside; and that the agreement was intended to remain in force after the divorce of Hester and Robert, as evidenced by their acting under the agreement for more than 10 years after they were divorced. However, the chancellor ruled that so much of the agreement as provided for disposition of the Logan Company stock upon the deaths of Hester and Robert· was against public policy and void. Judgment was entered declaring that the agreement of Hester to divide her stock between the two sons at her death, and the similar agreement of Robert as to his stock, were "invalid and unenforceable". In other respects the agreement was adjudged valid.

It appears from the chancellor's written opinion, and the briefs, that the provisions for disposition of the stock upon the deaths of Hester and Robert were held invalid on the theory that, when Hester and Robert married new spouses, the provisions became void as a fraud upon the rights of the new spouses and any children that might be born of the new marriages. Wides v. Wides' Ex'r, 299 Ky. 103, 184 S.W.2d 579, was relied upon as supporting that theory.

In the Wides case, a separation agreement provided that the husband would, upon his death, leave all of his property to his divorced wife and their children. He later remarried, and then died, leaving his second wife surviving him as his widow. The question was whether the divorced wife could enforce the separation agreement without regard to the statutory rights of the widow. This court held that, in view of the equities of the case and the public policy to protect the rights of widows, the

widow was entitled to claim her dower and distributable share in the estate.

The Wides case did not hold that the separation agreement was *void* as against public policy; it held merely that the agreement could not bar the widow from receiving her statutory share of the deceased husband's estate.

In the case before us, there is no basis for holding that any fraud has been committed as to the rights of the second spouses of Robert and Hester, or that the agreement is inequitable as to them, because until the deaths of Robert and Hester their second spouses have no claim against or interest in the personal property of Robert and Hester. The second spouses may both die before Robert and Hester; the latter may acquire substantial estates aside from the Logan Company stock, so that their surviving spouses may receive their statutory shares as survivors without touching the stock; or both Robert and Hester might die without owning any Logan Company stock at the time of their deaths. As far as the children of the second marriages are concerned, they have no guaranteed rights comparable to a widow's rights, so in no event could the separation agreement be unenforceable as to them.

If Robert Logan should die, owning Logan Company stock, and survived by a widow, and if he should not have sufficient estate, aside from the stock, to provide for the widow's statutory share, then under the Wides case the widow's claim would take precedence over the separation agreement, to the extent necessary to preserve her rights. But even under those circumstances, the separation agreement would not be void, but merely unenforceable to the extent that the widow's rights took precedence.

We are of the opinion that the chancellor erred in adjudging that the provisions of the separation agreement were invalid and unenforceable on the ground of public policy and as in fraud of the rights of the second spouses.

Counsel for Robert maintain that the chancellor was justified in modifying

the separation agreement under the principle that separation agreements will be closely scrutinized by courts of equity, and may be modified by the courts at any time if tainted by fraud, undue influence or duress or if unfair, unreasonable or inequitable. Counsel cite Alderson v. Alderson, 247 Ky. 12, 56 S.W.2d 534; Clark v. Clark, 301 Ky. 682, 192 S.W.2d 968; and Pegram v. Pegram, 310 Ky. 86, 219 S.W.2d 772. All of those cases rely upon Sparks v. Sparks, 215 Ky. 508, 284 S.W. 1111, 1113, in which this Court said:

> "Separation agreements are upheld when untainted by fraud, undue influence, or coercion, and when the terms are fair, reasonable, and equitable, *considering the circumstances of the parties at the time they are made.*" (Our emphasis.)

Counsel seem to argue that the separation agreement should be set aside, under the above cases, not because it was inequitable *at the time it was made*, and not because it was inequitable as to the parties to the agreement, but because it later became inequitable, when the parties remarried, as to their second spouses. The cited cases do not furnish any support for such an argument, and we are not impressed by the argument.

■ It is further contended, on behalf of Robert, that the agreement should be set aside, or at least that the chancellor was justified in modifying the agreement as he did, because of duress exerted by Robert's father at the time the agreement was made. It appears that Robert's father temporarily removed Robert from the payroll of the Logan Company before the agreement was signed, and threatened to remove him permanently, and to disinherit him, unless he signed the agreement. We are not cited to any case in which economic coercion of this character, exerted by a third party, has been held to constitute grounds for invalidating a contract. The alleged coercion actually was more in the nature of an inducement. There was no threat to deprive Robert of anything to which he had a positive right.

When it is considered that Robert does not claim that there was anything inequitable about the agreement at the time it was made, and that he accepted the benefits of the agreement for 13 years, it becomes obvious that the claim of duress is wholly without merit.

■ Counsel for appellants maintain that this action was related to or incidental to the divorce proceedings between Hester and Robert, and therefore Hester is entitled to be awarded her costs and attorney fees as against Robert. The major issue in this action did not involve the question of how much money or property the divorced wife should receive by reason of the separation and divorce; the real question had to do with what disposition would be made of the property of the parties after their deaths. The two adult sons, rather than the divorced wife, were the ones whose interests were affected by the action. It is our opinion that Hester was not entitled to judgment against Robert for her attorney fees. As concerns the allowance of costs, Hester will become the successful party in the action under the judgment directed by this opinion, and therefore will be entitled to recover her costs as against Robert. KRS 453.040.

In the proceedings in the lower court, Hester filed a cross petition against the Logan Company, asking for judgment against the company for the amount of certain dividends due on the 227 shares of stock that had been turned over to her under the separation agreement. Pursuant to order of court, the company paid into court the dividends in question, and other dividends that accrued while the action was pending. The judgment released the company from further responsibility and allowed the company its costs against Hester. No question is raised on this appeal as to that part of the judgment, and it will stand.

The judgment is reversed except as it relates to the Logan Company, with directions to enter judgment dismissing the petition of Robert S. Logan and the intervening petition of Ruth C. Logan and Hume Logan III.