John B. JACOBSON, Plaintiff-Appellant,

v.

Robert VESTAL, Defendant-Respondent.

No. 49226.

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1962.

**678**

J. W. Grossenheider, Lebanon, for appellant.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Paul L. Bradshaw, Warren S. Stafford, Springfield, for respondent.

HYDE, Judge.

Action for $75,000.00 damages for loss of hand in a corn picker. The court sustained defendant's motion for summary judgment, under Rule 74.04, V.A.M.R., based on plaintiff's admissions in his deposition, which the court found "shows he was guilty of contributory negligence as a matter of law." Plaintiff has appealed from the judgment entered.

Negligence alleged, on which plaintiff relied, was failing to warn plaintiff that the corn picker would frequently become clogged and that plaintiff should not attempt to remove the material causing the clog with his hand while the motor was operating. Plaintiff and defendant lived on farms near each other and recently had traded work in filling silos. Plaintiff asked for a job running a corn picker defendant had recently bought. Defendant said nothing about how to run it; but plaintiff, who was 37 years old, had operated several types of corn pickers when he lived in Iowa in 1947 and 1948 while working on farms there. He said they all operated on the same principle. Plaintiff had lived on a farm with his parents, in Iowa, and had operated many kinds of farm machinery then and later. (He had army service before and during the Korean War.) Plaintiff said he had never disengaged the power on a corn picker before trying to unchoke it, either on the one by which he was injured or those previously used in Iowa. However, plaintiff had recently operated a power mower as to which he said "whenever it plugged up, I shut it off." Plaintiff said defendant's picker was in good mechanical condition and was equipped with a lever on the tractor to disengage the power to the picker, which lever was located near his feet. Plaintiff was thoroughly familiar with the purpose of the lever; he knew it could be placed in neutral and thus stop the operation of the picker. Plaintiff operated the picker on Thursday and Friday of one week and soon after he started again on the next Monday morning he was injured.

The contention made in plaintiff's brief is that "whether or not plaintiff actually realized the danger involved in unplugging the corn picker with the motor running was a jury question." It is further stated "evidence of knowledge and appreciation of the danger is not so clear, convincing and one-sided that the court can say reasonable minds could not differ as to plaintiff's contributory negligence."

On this issue, plaintiff's testimony was in part as follows:

"Q. Didn't you realize it was dangerous to do that without disengaging the power? A. Evidently it was.

"Q. Didn't you realize that before you did it, though?

"A. I never thought anything about it, I just done that, got off and unplugged it and go on.

"Q. You didn't answer my question, didn't you realize it was unsafe and dangerous to get off and unchoke a corn picker without disengaging the power to it? A. Yes, it is dangerous.

"Q. And you realized that, didn't you? A. I don't know if I did or not, *I had heard that it was*.

"Q. You had heard it was? A. Yeah.

"Q. And you knew it was, didn't you, you knew you might get your hand or arm caught in it?

"A. *I always figured that would happen to the other guy.*

556789

"Q. I know, but *you realized that was unsafe* and dangerous to try to unchoke it that way? A. Yeah, I guess you might put it that way.

"Q. Is that your answer yes, I just want a yes or no answer? A. *All right, yes.*

\* \* \* \* \* \*

"Q. But you realized that was dangerous and you might get your hand caught in there?

"A. I don't know whether I did or not, I know that is the best way to clean out a corn picker, though, or it was till I lost my hand.

\* \* \* \* \* \*

"Q. Now, at the time you started to unchoke the stalk ejector on this corn picker, you knew that those rollers were up in there, didn't you? A. Yes.

"Q. And you knew that they were operating?

"A. Yes, but I had done that before and nothing ever happened.

"Q. *So you were just taking a chance* that nothing would happen that time?

"A. *Well yeah*, you might say that.

"Q. And you knew that you could disengage the power and stop the corn picker before you got off the tractor?

"A. Yes, I knew I could.

"Q. And *you knew that was a safe way to do it?*

"A. *Yes, I knew that was*—took the longest too, that takes a long time to unplug that darn thing that way." (Emphasis ours.)

The court decided this case on the motion for summary judgment upon submission of both parties. In the oral argument in this court, plaintiff's counsel made the following statements: "The only question is, and the question that the Court ruled on was: is the plaintiff himself guilty of contributory negligence as a matter of law so that a jury should not hear this case? If that is so, we are happy to have the case stop here rather than go through a trial and then have a motion for directed verdict sustained. \* \* \* Let me say this so that there will be no doubt about it. This plaintiff is going to stand or fall on the deposition, on what's stated in the deposition. We don't complain that this isn't a proper remedy. We don't complain that we could produce any other evidence to vary this. We state that just because this man stated finally that he did understand it was dangerous doesn't prove that he knew that it was dangerous. He may not have known, and we think it is a jury question to determine whether he did know or not."

In two previous corn picker cases, we have held plaintiff's evidence showed contributory negligence as a matter of law. Chisenall v. Thompson, 363 Mo. 538, 252 S.W.2d 335, and Crandall v. McGilvray, Mo. Sup., 270 S.W.2d 793. Plaintiff seeks to distinguish these cases saying that in both cases the plaintiffs knew the safe way to unchoke the picker and had used the safe way part of the time, while plaintiff herein had never used any other method than to pull out stalks with the power engaged. Also in those cases, there was a warning sign on the machine, and plaintiff saw no warning sign on this machine. In the Chisenall case (252 S.W.2d 1. c. 337) we said: "We are of the opinion that plaintiff was guilty of negligence as a matter of law; that he realized it was dangerous to clean the picker by removing the stalks from the top side of the rollers while they were revolving. The danger was obvious to anyone even with limited experience in operating machinery. He knew it was safe to clean the machine while the power take-off lever was in neutral." Likewise, we said in the Crandall case (270 S.W.2d 1. c. 800): "Under the situation as proven to have existed by plaintiff's testimony the danger of having one's fingers caught in the rollers in trying to remove an object from above the husking rollers while the power was on and the rollers under tension was open and obvious to a per-

son of ordinary intelligence and particularly to one of plaintiff's age and experience." See also Hahn v. Flat River Ice and Cold Storage Co., Mo.Sup., 285 S.W.2d 539, 543. In both cases, we held the plaintiff had chosen an obviously dangerous method when he knew there was a safe way. Our conclusion, from the testimony hereinabove set out and from a consideration of plaintiff's testimony as a whole, is that the situation is substantially the same in this case; the fact that plaintiff had always used the dangerous way because he considered it quicker and easier does not change the situation. As hereinabove shown, both parties desired to have the case determined on the motion for summary judgment on the testimony in the deposition.

The judgment is affirmed.

All concur.