**G. Roy LYNCH and Ruth B. Lynch, Respondents,**

v.

**Charlie HILL and John Lynn, Appellants.**

**No. 54020.**

Supreme Court of Missouri, Division No. 1.

July 30, 1969.

W. F. Daniels, Fayette, for respondents.

Terence C. Porter, Columbia, for appellants, Welliver, Porter & Cleaveland, Columbia, of counsel.

HOUSER, Commissioner.

Charlie Hill and John Lynn were jointly sued by Roy Lynch for $50,000 for personal injuries (Count I) and by Ruth Lynch for $10,000 for loss of consortium (Count II), resulting from an accident in which Roy Lynch's leg was crushed by the mechanism of a backhoe digger owned by defendant Hill and operated by his employee, defendant Lynn. A trial jury returned a verdict on Count I for Roy Lynch and against defendant Hill, the employer, for $3,112.50, but exonerating the employee Lynn, and for both defendants on Count II. Plaintiffs filed a joint motion for new trial on both counts. Defendant Hill filed motions to vacate the judgment and

enter judgment in his favor on Count I. The court sustained the motion of Roy Lynch and granted him a new trial on the ground that in discharging the servant and holding the master, where the master's liability was based entirely upon the doctrine of respondeat superior, the jury rendered an improper and impossible verdict under the law. The court overruled the motion of Ruth Lynch for a new trial and overruled defendant Hill's motions. Defendant Hill appealed from the latter order. Defendant Lynn appealed from the order granting Roy Lynch a new trial.

The machine in question is a Case rubber-tired tractor with a bucket scoop attached to the front and a ditch-digging device attached to a boom at the rear. It weighs 4,000 or 5,000 pounds. There are two seats, one in front of the other. When the operator uses the bucket scoop he sits in the front seat, facing forward. When he uses the digging device he sits in the back seat, facing backward. The two seats overlap. Only one of the seats can be used at a time. When the backhoe seat is "down" (in position to use) it covers part of the front seat. To get the backhoe seat down it must be pulled up and turned around. In front of the operator seated in the back seat is a panel of hand levers. The operator's feet rest on two metal foot pedals, each about 6 by 8 or 10 inches in size, around the outside edges of which there is a guard—an iron bar which protects the operator's foot from slipping off and protects persons "getting on when you are not supposed to." The guard is 2 or 3 inches higher than the foot pedal. To operate the backhoe the operator, seated in the back seat, manipulates hand levers on a panel in front of him and pushes the foot pedals. The hand levers raise, lower and manipulate the digger mechanism. The foot pedals move the boom laterally in either direction, depending upon which one (left or right) is depressed. When a foot pedal is pushed down and held down a mechanism swings the boom clear around into lateral contact with the rear end of the tractor. This takes only 2 or 3 seconds.

The boom will not swing around unless the motor is running.

To climb onto the machine one mounts it from the left side (facing the front). There is a step for this purpose even with the rear of the motor. One cannot mount from the right because there is no opening on the right. There are no steps in the back; the machine is not designed to be mounted from the rear. Although possible it is dangerous to mount from the rear. In so doing one would probably step on the guard before stepping on a foot pedal. In order to step on the pedal it would be necessary to step up 2 or 3 inches, over the guard.

On the morning of the accident defendant Lynn was digging a ditch for a sewer line from the street in front of a church parsonage to the parsonage building. The pastor and Roy Lynch (hereinafter "plaintiff"), who was a deacon in the church, showed defendant Lynn where to dig the ditch. The parsonage sat up on a high bank. After digging from the street into the bank it became necessary to move the machine to the top of the bank so the trench could be dug back into the yard. Defendant Lynn was not familiar with the circuitous route which had to be taken to reach the yard up on the high bank. This involved driving the machine down the street and through an alley. Plaintiff testified that defendant Lynn got down off the machine, came to where plaintiff was standing, about 4 feet to the right of the right rear wheel of the tractor, and asked plaintiff how to get up on the bank. Plaintiff told him "the best he could" but defendant Lynn did not seem to understand. Defendant Lynn then said, "You come on and show me how to get up there," and at the same time "motioned up" towards the backhoe seat of the digger, which at that time was "down flat," that is, in position for use. Although defendant Lynn did not actually tell plaintiff in so many words to climb up on the tractor, plaintiff understood that Lynn intended for him to do so, and seeing that the backhoe seat was in position for

use, plaintiff walked to the rear of the machine, placed his left foot on a stabilizer bar, which was down at the time, and stepped up on the machine with his right foot, intending to sit in the backhoe seat. The only place he saw to step was "a little plate up on top, right in front of that seat." The "plate" was one of the foot pedals. The motor was running. When plaintiff stepped on the foot pedal the boom immediately activated, swung around quickly, catching and mashing plaintiff's left leg between the boom and the chassis of the tractor.

Defendant Lynn's version of the facts: He got off the tractor, talked to plaintiff about how to move the equipment to the upper level of the property, made no statement to plaintiff about riding the machine or going with him, climbed back on the tractor and started to move down the street when he heard the boom start to move. He turned and saw plaintiff with one foot on the pedal. He tried unsuccessfully to step on the other pedal but it was too late. According to defendant Lynn the backhoe seat was up (not in a position for use) and the stabilizer bars were folded up against the boom at the time (in which position it would have been very difficult to use a stabilizer bar as a step in mounting the rear of the tractor).

On this appeal defendants seek outright reversal of the judgment and entry of judgment for them on four grounds.

First, defendants claim that plaintiff was guilty of contributory negligence as a matter of law. They point out that plaintiff made these admissions: that Lynn did not tell him specifically to climb upon the tractor; that the motor was running when he started to board it; that he had seen the machine operate that day and for three or four days previously; that he did not ask defendant Lynn where he was to ride on the tractor; that he had never seen anyone ride the tractor in the position he intended to assume; that he did not normally make a practice of "going around climbing on machines like that" and that it would be dangerous to do so. Defendants cite texts and cases[1] for the proposition that one who voluntarily and unnecessarily assumes a position of danger cannot recover for an injury arising out of a risk incident to the position if the danger is obvious and he understands and appreciates the hazards involved. Defendants claim that the issue of whether plaintiff exercised ordinary care for his own safety is not debatable; that reasonable minds could not differ on the question of his negligence in suddenly and without prior announcement attempting to climb upon a heavy and complicated machine, with its motor running, in disregard of what effect this might have on the movement of operating levers and mechanisms used to activate the various parts.

Defendants' authorities are not apposite. They involve persons experienced in the handling and use of the machinery or facility causing their injuries and situations in which there was an open and obvious condition as well known to plaintiff as to defendant. Plaintiff was neither knowledgeable nor experienced in the characteristics and operation of this machine.

Only when reasonable minds could not differ as to plaintiff's negligence may contributory negligence be established as a matter of law. Helming v. Dulle, Mo.Sup., 441 S.W.2d 350 (Decided May 12, 1969). Reasonable minds could differ on the question whether plaintiff was guilty of contributory negligence. From the evidence the jury reasonably could find the following: Defendant Lynn asked for information plaintiff was at hand to impart.

1. 2 Restatement of Torts, 1251, 1252, § 478; 38 Am.Jur.Negligence § 182; Chisenall v. Thompson, 363 Mo. 538, 252 S.W. 2d 335; Hahn v. Flat River Ice & Cold Storage Co., Mo.Sup., 285 S.W.2d 539; Jacobson v. Vestal, Mo.Sup., 361 S.W.2d 677, and Coleman v. North Kansas City Electric Co., Mo.Sup., 298 S.W.2d 362.

It involved giving directions. Plaintiff gave defendant Lynn directions which Lynn seemingly failed to comprehend. Finally Lynn issued to plaintiff an invitation which, coupled with a motion of his hand or arm in the direction of the machine, could be interpreted as an invitation to mount the machine, take the vacant seat on the machine, and accompany Lynn to show him the route to the upper level. Plaintiff looked and saw the seat, which was down and ready to be occupied and "there was the logical place. The only way [he] could have got up there was to step up on the beam and on up to the top there." The vacant seat appeared to be waiting for him to occupy it. That is where he intended to sit. Plaintiff did not know that the tractor was designed to be mounted from the left. He was not warned or instructed that it should not be mounted from the rear. While he had casually observed the machine in operation and knew generally its function and operation, he had no detailed knowledge of the manner in which it was activated, or that foot pedals caused the boom to swing laterally; or that the "plate" on which he stepped was in reality a foot pedal or that depressing the "plate" would activate the boom and cause it to collide with the rear end of the tractor if the motor was running. There was no open and obvious condition of danger known to plaintiff or observable by the exercise of ordinary care of his own safety. The operator, close at hand, did nothing to stop him from mounting the tractor and did not warn him of potential danger. Plaintiff "figured that if it was dangerous [Lynn] wouldn't have let [him] get up there." There was nothing on the machine to warn persons not to use the pedal as a step or that the pedal triggered the boom mechanism. The only place he saw to step was the plate, a piece of corrugated iron which looked like a step, but which turned out to be the triggering mechanism that caused the injury. He did not intend to move a lever or trip something that would activate the machinery. In using the plate as a step plaintiff was acting with ordinary care for his own safety and was not voluntarily placing himself in a dangerous situation with knowledge of the hazard. On evidence authorizing these findings we cannot find plaintiff guilty of contributory negligence as a matter of law.

■ Second, appellants claim that plaintiff did not plead or prove a cause of action against them for negligence. The argument is that plaintiff's theory of liability as evidenced by his verdict-directing instruction was akin to that of breach of duty of an owner or occupier of land to warn his invitee of dangers not reasonably apparent to him, but that plaintiff was not an invitee to whom defendants owed such a duty, but was either a trespasser as to whom they owed only the duty to refrain from willfully and wantonly injuring him, an intermeddler, a volunteer or at most a bare licensee. Appellants say that defendant Lynn's request of plaintiff for directions and the motioning of his hand or arm are not susceptible of the interpretation that Lynn was engaging plaintiff to assist in the work or that he was expressly inviting him to enter upon the piece of equipment. As we have seen, it was a jury question whether defendant Lynn issued an invitation to plaintiff to assist him in the performance of the work. If so appellants could be held liable under the rule that a duty to exercise ordinary care is imposed upon one who invites another to assist in an operation. Fletcher v. Kemp, Mo. Sup., 327 S.W.2d 178, 182 [4]; Beckett v. Kiepe, Mo.App., 369 S.W.2d 258 [1].

■ Appellants further urge that even if defendant Lynn's act be interpreted as an invitation there is still the question whether Lynn had actual or implied authority from his employer to engage plaintiff in the service of defendant Hill in carrying out the work in progress. That Lynn had implied authority to involve plaintiff in the work is evident. Defendant Hill testified that Lynn was employed to dig this ditch and that was Lynn's purpose

in being there; that neither of them knew where the ditch was to go; that it was his (defendant Hill's) understanding that "someone from the parsonage" would be there *to direct him or Lynn "about where to put it";* that he or Lynn would be "told where it would go." Plaintiff, a parishioner and deacon of the church, was on hand for the purpose contemplated by defendant Hill. In directing Lynn, the person in charge of the operation, "where the ditch was to go" it became necessary to direct him how to reach the upper level. Under these circumstances a request by Lynn to get on his employer's tractor and accompany Lynn for the purpose of pointing out the route was within the implied authority of Lynn.

Third, defendants urge that plaintiff failed to make a submissible case of primary negligence against defendants based on failure to warn that stepping on the plate would trigger the mechanism and cause the digger to swing around and strike one standing on the machine; that defendant Lynn was under no duty to warn because he did not know and in the exercise of ordinary care should not be held to have known or required to anticipate that plaintiff would attempt to mount the tractor from the position he selected. Citing Taylor v. Dale-Freeman Corporation, Mo.Sup., 389 S.W.2d 57, for the proposition that the standard of diligence is foresight, not hindsight, and that case and Schlegel v. Knoll, Mo.Sup., 427 S.W.2d 480, for the rule that it is not negligence to fail to anticipate that another will be negligent, defendants argue that defendant Lynn was entitled to assume and act upon the assumption that plaintiff would exercise due care for his own safety.

A primary negligence case of failure to warn was made by evidence of defendant Lynn's knowledge and plaintiff's lack of knowledge of the potential danger of the triggering mechanism; the fact that the two men, Lynn and plaintiff were standing side by side near the digger; that defendant Lynn issued the invitation and made the motion of hand or arm; that plaintiff was in full view of Lynn; that plaintiff immediately started in the direction of the machine and began to climb upon it at a point and from an angle which necessarily would take him into the area or zone where the triggering mechanism was located under circumstances in which it might reasonably be anticipated that the triggering of the mechanism would injure him; that notwithstanding there was time and distance within which a warning could have been issued or effective preventive action taken defendant Lynn did not make any attempt to stop, warn or deter this 74-year-old man from climbing onto the machine and into a perilous situation.

▮ Appellants brand plaintiff's action as foolhardy, impetuous and unpredictable, intimating that it is unreasonable to conclude that he might have been interested in riding "only a few feet" from the street level to the upper yard level. These questions were for the jury. The route was more than "a few feet." The route required running the machine 200 feet down Boone Street to 6th Street, 100 feet up 6th Street, then 200 feet back to the parsonage yard. The jury might well conclude that a 74-year-old man could be expected to prefer to ride than walk a distance of 500 feet.

Lastly, defendants contend that the verdict in favor of defendant Lynn, the employee of defendant Hill, operated to discharge the latter as well. They point out that the case was submitted on the theory that defendant Lynn was guilty of negligence in failing to warn; that recovery against defendant Hill was based solely upon the theory of respondeat superior, no independent negligence on Hill's part having been pleaded or proved, and that the jury verdict in favor of the employee operates to exonerate both the employee and his employer. Defendants cite Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S.W.2d 813; Stoutimore v. Atchison, T. & S. F. Ry. Co., 338 Mo. 463, 92 S.W.2d 658;

Quinn v. St. Louis Public Service Co., Mo.Sup., 318 S.W.2d 316; Max v. Spaeth, Mo.Sup., 349 S.W.2d 1; Johnson v. Hunter, Mo.App., 398 S.W.2d 449; Grace v. Smith, Mo.App., 270 S.W.2d 79.

The court, *over the objection of defendants,* gave Instruction No. C-12, in which the jury were given instructions with respect to several different forms of verdict, one of which was as follows:

"If all of you agree upon a verdict in favor of the Plaintiff, G. Roy Lynch, it may be in the following form:

'We, the jury, find the issues in favor of plaintiff Roy Lynch and against defendant _____ (here insert only the name of the defendant you find against) and we assess plaintiff Roy Lynch's damages at $_____ (stating the amount), and we further find the issues in favor of the defendant _____ (here insert the name of the defendant in whose favor you find.)
_____ Foreman' "

This was the form used by the jury. Defendant Hill's name was inserted in the first blank space and defendant Lynn's name was inserted in the last. Under the pleadings and evidence if either of the defendants was liable both were liable. The liability of the defendant Hill, the employer, was dependent solely upon the doctrine of respondeat superior, and there was no basis for the verdict returned. As stated in Ruehling v. Pickwick-Greyhound Lines, 337 Mo. 196, 85 S.W.2d 602, 604, "The giving, by the trial court, of this form of verdict was in effect, and tantamount to, an instruction that they were authorized to make such finding and was apparently so understood by them and therefore misleading and prejudicial." Absent consent, invitation or request, or absent evidence of negligence on the part of defendant Hill other than under the rule of respondeat superior, it was reversible error to give the form of verdict used by the jury. Atterbury v. Temple Stephens Co., 353 Mo. 5, 181 S.W.2d 659, 661 [1]; Ruehling v. Pickwick-Greyhound Lines, supra.

Of the five cases cited by defendants, supra, the closest on the facts is Quinn v. St. Louis Public Service Co., but that case is to be distinguished for the reason that the record therein showed that the forms of verdict were given to the jury *without objection* and by the consent or invitation of the parties. The court specifically distinguished that from the situation in Ruehling, supra, pointing out that in Ruehling plaintiff-appellant objected and excepted to the giving of the forms of verdict to the jury, just as defendants-appellants did in the instant case.

The verdict exonerating defendant Lynn would have entitled defendant Hill to discharge *if the trial had been free of error.* The trial was not free of error, however, because Instruction No. C-12, offered by the court, erroneously authorized an inconsistent verdict. In this situation the trial court had the authority and duty to upset the verdict and judgment and grant a new trial. Cameron v. Howerton, Mo.Sup., 174 S.W.2d 206, 209, 210.

The orders appealed from are affirmed. Cause remanded for a new trial of Count I.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., STORCKMAN, J., and HENLEY, Alternate Judge, concur.

HOLMAN, J., not sitting when cause was submitted.