Kenneth STAFFORD and Marlow Stafford,
Appellants-Respondents,

v.

FAR–GO VAN LINES, INC., a corporation,
Respondent-Appellant.

No. 25693.

Missouri Court of Appeals,
Kansas City District.

Sept. 7, 1972.

Dean F. Arnold, Kansas City, for appellant.

Don B. Roberson, Kansas City, for respondents.

PER CURIAM.

On August 13, 1969, one Jennings Howard Roberts, a convict, on escape from the West Virginia State Penitentiary, drove a tractor-trailer into collision with a building owned and operated as a partnership by the plaintiffs as "Fina Truck Haven" at Cameron, Missouri. This collision resulted in substantial property damage to the physical structures. To recover such damage, this suit was brought in DeKalb County, Missouri, by the plaintiffs against Far-Go Van Lines, Inc., Ira Perry, a driver-employee of Far-Go, and the driver, Roberts, and was thereafter transferred on change of venue to Platte County for trial. The trial resulted in a jury verdict in favor of the plaintiffs against the defendant Far-Go Van Lines, Inc. in the amount of $3,000.00, and in favor of the defendant Ira Perry and against the plaintiffs, upon which verdict judgment was duly entered. The jury did not return any verdict as to the defendant-driver Roberts, but the trial court nevertheless entered a judgment against him in the amount of $3,000.00 some three weeks after trial.

The plaintiffs filed motions for a new trial, attacking the judgment as to Far-Go as inadequate, and the judgment as to both Far-Go and the exoneration of defendant Perry as the result of an alleged prejudicial trial incident, discussed hereafter. The defendant Far-Go stood on its motion for directed verdict and for judgment, and did not file a motion for a new trial. The trial court overruled all of these motions. Both the plaintiffs and Far-Go appealed. It is in this posture that this matter comes before this court for review.

Far-Go Van Lines, Inc., is a corporation with its home office in Norfolk, Virginia and engaged in the long distance transportation by motor vehicles of freight upon the public highways under appropriate Interstate Commerce Commission and state permits and licenses. For the purposes of this case, it is apparently admitted, or not disputed, that it was the beneficial owner of the equipment involved in this suit and that the defendant, Ira Perry, was in its employ as a long distance, over-the-road driver, and at the time of this incident, the equipment bore Far-Go's name plates, ICC permit and state permits and licenses.

Defendant, Ira Perry, was an experienced long distance truck driver. He was operating Far-Go equipment alone and without a helper at Jacksonville, Florida when he fist met defendant Roberts. Roberts then was on other equipment operated by another Far-Go driver. Tentative arrangements were there made as between Perry and the other driver to have Roberts switch to the Perry outfit and to act as Perry's helper. To confirm and to obtain approval from Far-Go as to these arrangements, Perry called the home office of the corporation at Norfolk, Virginia, and he testified that such approval was granted— to use Roberts on his equipment as his helper.

Roberts was in fact an escaped convict, although there is no evidence in this record that this fact was known to either Perry or Far-Go.

From Jacksonville, Florida, Perry and Roberts went back to the home office of Far-Go in Norfolk, Virginia where they spent two or three days and loaded a trailer with household goods to be hauled to Tacoma, Washington. In this connection, it

should be noted that apparently Perry selected the route and was to pay Roberts from his own funds.

No contention is made by any of the parties that Roberts was, in fact, ever a direct employee of Far-Go. However, no one can read this record and reach any other conclusion but that Far-Go knew that Roberts was to ride with Perry and act as his helper in the haul to Tacoma.

When Perry and Roberts arrived with the Far-Go equipment and load at Kansas City, arrangements were made to stop over for the night of August 12, 1969, before proceeding the next morning on the trip to Tacoma. Perry had some friends in Kansas City with whom he intended to spend the night. The freight outfit was parked in a truck lot in Kansas City, Kansas.

Perry testified that on the trip into Kansas City, he had stopped at Effingham, Illinois and had a key to the door of the tractor made for Roberts so that he, Perry, would not have to go around the equipment to lock or unlock the door on the passenger side of the cab. Either at Effingham or upon arrival at Kansas City, Perry gave Roberts this key so that he could sleep in the tractor the night of the stopover.

There was a sharp dispute as to whether this key also worked the ignition on the truck. The service manager for Mack Truck at Kansas City testified for the plaintiffs that this type of Mack tractor came equipped with two keys, each of which operates both the door locks and the ignition. Roberts testified that the key given him by Perry operated both. Perry testified that the key given Roberts operated only the door locks. It is of significance, however, that when Perry went to Cameron, Missouri to retrieve the equipment after the accident, the sheriff handed him a key that operated the ignition.

Perry's friends picked him up at the truck stop in Kansas City, Kansas and he left Roberts there with the equipment and the key. He also gave Roberts two telephone numbers where he could be reached. Both Perry and Roberts testified that Perry had not given Roberts permission to drive—although neither did he tell him not to drive.

The evidence was that at the time, Roberts was twenty years old. Perry knew that Roberts did not have a driver's license and had no experience in operating this type of equipment. The two had discussed the possibility of Roberts securing a learner's permit and learning to operate the equipment so as to relieve Perry of some of the driving.

Sometime during the night or early morning, Roberts started the equipment, left the truck stop and became lost. He testified that he tried to reach Perry by telephone, to no avail. He found himself in Cameron, drove into the plaintiffs' establishment to call Perry, panicked, and drove the equipment into collision with plaintiffs' building. On the morning of August 13, 1969, Perry returned to the truck lot, found the equipment gone, looked around for it awhile, and then reported it stolen to the police. It was, of course, located at Cameron and returned by Perry. Roberts was arrested as a fugitive and returned to the West Virginia State Penitentiary.

Kenneth Stafford, plaintiff and partner with his brother co-plaintiff, testified that he and his brother owned the truck stop, restaurant and gas station at the intersection of I-35 and U.S. 36 at Cameron, Missouri. A canopy of prefabricated steel covered both the restaurant building and the passenger car servicing area; it was about one hundred feet by fifty feet in size; the building and canopy had been constructed in 1968 at the cost of $65,-000.00; the entire property, including all buildings, had a fair market value immediately before the damage of $240,000.00 and a fair market value immediately after the damage of $222,000.00, and he had spent $1200–$1300 for temporary repairs. He further testified that the property had been constructed by Diven and Co., Armco

Distributors in that area, and that this company had made a repair estimate of $13,000.00 and had submitted an unguaranteed bid at that figure (Plaintiffs' Exhibit No. 13).

Mr. Diven testified that this was his estimate of repair costs, but he could not guarantee the bid because these were pre-engineered steel and brick buildings which were badly "sprung" by the collision impact; that 75%–80% of the canopy and building roof would have to be dismantled; that there was also damage to the glass and brick, the full extent of which could not be ascertained until dismantled, and that the steel frames of this type of construction could be straightened under his bid, but that they frequently "creep back", so he could not guarantee his bid or work.

Defendant Far-Co made an oral motion for directed verdict at the close of all the evidence, and thereafter filed an after trial motion "for judgment in accordance with said defendants motion for a directed verdict at the close of plaintiffs' evidence and at the close of all the evidence, or in the alternative, motion of defendant, Far-Go Van Lines, Inc. for a judgment in its favor and against the plaintiffs." This motion was apparently filed under the provisions of Rule 72.02, Rules of Civil Procedure, V.A.M.R., and was not coupled with a motion for a new trial as therein permitted. Indeed, Far-Go does not ask for a new trial in the alternative in the record or in its briefs, but seeks only a judgment in its favor and against the plaintiffs.

■ From this approach, the alleged errors in Instructions No. 3 and No. 4 become immaterial upon defendant Far-Go's appeal. Appellant Far-Go is precluded from urging any errors (other than the submissibility of plaintiffs' case) which were not presented to the trial court in a motion for new trial, except those specifically noted in Rule 79.03 or 79.04, Rules of Civil Procedure. Sapp v. Key, Mo.Sup., 287 S.W.2d 775, 780; Millar v. Berg, Mo.

Sup., 316 S.W.2d 499, 501–502; C & O Distributing Co. v. Milner Hotels, Inc., Mo. App., 305 S.W.2d 737, 739.

The question is whether or not the plaintiffs made a submissible case against the defendants, or, stated differently, if the court erred in failing to direct a verdict for defendant Far-Go and enter judgment for it at the close of all the evidence.

■ Plaintiffs' claim against defendants comes within the common law doctrine of "Entrustment", sometimes called the "dangerous instrumentality" rule. This rule is succinctly set forth in Restatement-Torts 2d, Section 390, p. 314, as follows:

"Sec. 390.  Chattel for Use by Person Known to be Incompetent

One who supplies directly *or through a third person* a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (Emphasis this Court's)

and in 8 Am.Jur.2d, Section 573, pp. 125/127, it is stated:

"Sec. 573.  Effect of entrusting vehicle to incompetent or reckless driver.

The common-law rule that the owner of a motor vehicle who lends it to another, or permits or consents to its use by another is not liable for the negligence of the person to whom the vehicle is entrusted, in the absence of circumstances calling for the application of the doctrine of respondeat superior, is subject to limitation where an owner entrusts his motor vehicle to one unskilled in its operation, or who is an incompetent, reckless, or careless driver and likely to cause injury to others in operating it. The owner of a motor vehicle who loans the ve-

hicle to an incompetent or unfit person, knowing, or from the circumstances being charged with knowledge, that such person is incompetent or unfit to drive, may be held liable for an injury negligently inflicted by the use made of it by that driver, *although such use at the time of the injury is beyond the scope of the owner's consent*, provided it is established that the injury complained of was proximately caused by the driver's incompetence or unfitness. While a motor vehicle is generally not regarded as an inherently dangerous instrumentality, and the owner thereof is not generally liable for its negligent use by another to whom it is entrusted, *liability may arise if the owner permits operation of his motor vehicle by one whom he knows or should know to be so incompetent, inexperienced, or reckless as to make the vehicle a dangerous instrumentality when operated by such person.*

\*      \*      \*      \*      \*      \*

"Liability for the negligence of an incompetent or reckless driver to whom a motor vehicle is entrusted *does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle*, with permission to operate it, to one whose incompetence or recklessness is known or should have been known by the owner. *Nor does such liability rest upon imputed negligence or upon ownership or agency*; it rests upon the combined negligence of the owner and the driver—negligence of the owner in entrusting the vehicle to an incompetent driver, and negligence of the driver in its operation." (Emphasis this Court's)

The Missouri Supreme Court en Banc, in the case of Bell v. Green, 423 S.W.2d 724, 732, has cited with approval, the rule as stated in both the Restatement-Torts 2nd and 8 Am.Jur.2d, above quoted, as applicable in Missouri. The court in Bell said, l. c. 732:

"\*      \*      \* We refer, by way of analogy, to the line of authorities holding that the owner of a car may be liable if he, knowingly or having the means of knowledge, turns his car over to a driver who is incompetent by reason of age, inexperience, habitual recklessness or otherwise; such liability further depends upon a finding that the act of the owner concurs with the negligence of the driver as a proximate cause of the injury. \*      \*      \*"

Dinger v. Burnham, 360 Mo. 465, 228 S.W. 2d 696, 699; Ritchie v. Burton, Mo.App., 292 S.W.2d 599, 606; Lix v. Gastian, Mo. App., 261 S.W.2d 497, 500; Thomasson v. Winsett, Mo.App., 310 S.W.2d 33, 36.

While there is no reported case in Missouri which research has disclosed which specifically rules the liability of an owner where the owner's agent makes the use of a motor vehicle possible by a third person, of persuasive interest here is the case of Saunders v. Prue, 235 Mo.App. 1245, 151 S.W.2d 478, a decision of this court which involved a gratuitous bailment of an automobile. The evidence showed that the authorized agent and salesman of the DeWitt Chevrolet Company permitted the co-defendant, Prue, to take and drive a company car during the course of which operation Prue was involved in an accident resulting in injury to the plaintiff. The corporate defendant was sued upon the theory of negligent entrustment upon the basis of Prue's alleged incompetency to operate the vehicle.

After stating the general rule, that a bailor cannot be held responsible to a third person for injuries resulting from the bailee's negligent use of the bailed chattel, this court noted the exception which would result in liability on the bailor who knew or ought to know that the bailee was reckless, incompetent or unfit to properly use the bailed chattel and that a reasonable probable consequence of such use would result in injury.

Although the court held in the Saunders v. Prue case, supra, that there was not sufficient evidence to show that the agents

of DeWitt Chevrolet Company knew or should have known of bailee Prue's physical difficulties, it did recognize the exception to the general rule and laid down the formula in the following language, l. c. 483:

"It seems apparent to us that it was necessary for plaintiff to prove three things in order to hold the defendant, DeWitt Chevrolet Company, liable in this case: (1) That Prue was not sufficiently experienced to drive the automobile in question; (2) that the DeWitt Chevrolet Company knew or should have known of his lack of qualification in this respect; (3) that his inexperience contributed to the collision as one of the proximate causes."

and further said, l. c. 483:

"* * * The liability in such a case does not rest upon ownership or agency, but upon the combined negligence of the bailor and bailee—negligence of the bailor in entrusting the instrumentality to an incompetent bailee, and the negligence of the bailee due to such incompetency."

In holding that the plaintiff had failed to meet the standards set down above, the court said, l. c. 486:

"* * * But, whatever, may have been the condition of his eyesight and his hearing, at the time of the collision, there is no evidence *that the agents of the DeWitt Chevrolet Company* were aware of any defect therein. There is no evidence that the *agents of the DeWitt Chevrolet Company* knew Prue's age. * * *" (Emphasis this Court's.)

It is, of course, only through its agents that a corporation can act, and if the corporation-owner of automotive equipment is liable under the entrustment doctrine, it is by reason of the act of some person clothed with the general authority (here, complete custody and control of the equipment) to so act on behalf of the corporation, as its alter ego, and the knowledge or means of knowledge on the part of such corporate representative of the incompetency or other disability of the person to whom such instrumentality is entrusted. With reference to the Far-Go equipment, Perry occupied this status.

There is substantial and persuasive authority from other jurisdictions supporting these principles.[1]

Two of the cases cited in the footnote are of particular interest here. In Boland v. Love, 95 U.S.App.D.C. 337, 222 F.2d 27, one Spencer Love left his estate in Virginia for a protracted trip. He left his employee Hamilton (his private secretary) in general charge and control of the home place and automobiles and entrusted with the supervision of one Coates, a gardener on the estate, who was an ex-convict, an alcoholic, did not have a driver's license, and was generally untrustworthy. During Mr. Love's absence and the temporary absence of Hamilton, Coates secured the keys to an automobile (probably from above the sun visor) and took off on a pleasure trip of his own. While returning to the estate, he was involved in an automobile accident resulting in damage to the plaintiff. The court held that the entrustment doctrine was applicable and presented a jury issue as to the liability of Spencer Love for the act of entrustment by his secretary, Hamilton,

1. Arkansas Law Review and Bar Association Journal, Vol. 20, No. 2, (1966), wherein many cases are noted; Boland v. Love, 95 U.S.App.D.C. 337, 222 F.2d 27; Potter v. Golden Rule Grocery Co., 169 Tenn. 240, 84 S.W.2d 364; Sadler v. Draper, 46 Tenn.App. 1, 326 S.W.2d 148; Murray v. Wright, 166 Cal.App. 2d 589, 333 P.2d 111; Pierce v. Standow, 163 Cal.App.2d 286, 329 P.2d 44; Haring v. Myrick, 368 Mich. 420, 118 N.W.2d 260; Chaney v. Duncan, 194 Ark. 1076, 110 S.W.2d 21; Barrett v. Reed, 46 Tenn.App. 265, 327 S.W.2d 68; Collins v. Arkansas Cement Co., 453 F.2d 512 (CCA 8); Arkansas-Louisiana Lbr. Co. v. Causey, 228 Ark. 1130, 312 S.W. 2d 909; Grant v. Knepper, 245 N.Y. 158, 156 N.E. 650 (Cordozo, J.)

whereby Coates obtained access to the automobile. Hamilton had not given Coates any permission to drive the car.

In the case of Pierce v. Standow, 163 Cal.App.2d 286, 329 P.2d 44, a mother and her 17 year old son attended the same trade school. The son's classes let out before the mother's, and she was in the habit of giving her son the keys to her automobile each morning so that he could wait for her therein. Both she and her son testified that she had specifically forbidden him to drive the car upon several occasions. She knew he had no driver's license and was an unskilled driver, although he had frequently indicated to her that he was anxious to do so.

On the occasion giving rise to this suit, he drove the car into collision with a parked automobile while his mother was still in class. The mother was sued and in a jury-waived trial the court found against her upon the theory of implied consent. She appealed. In affirming the appellate court said, l.c. 45:

"The admitted fact that appellant daily entrusted to her son the keys to the automobile thus putting it in his power to drive the car at will is, in our judgment, sufficient to support the inference drawn by the trial court that she impliedly consented to his doing so. * * *"

█ █ Foreseeability is, of course, a factor in a dangerous instrumentality case. However, once the initial element of reasonable foreseeability is met, whether or not *all* of the results of the entrustment were foreseeable, becomes immaterial. The owner (Far-Go) is responsible, where there is no independent intervening cause, for all probable, natural or direct consequences or results of the entrustment. Far-Go knew, or the jury could find that it knew, that Roberts was on its equipment as a helper with its driver and that it had consented to and approved this arrangement. That the incompetent, unskilled and unlicensed Roberts might have an accident with the truck equipment, if entrusted with it by Far-Go's driver, Perry, who had knowledge of these deficiencies, satisfies the foreseeability test.

█ The common law doctrine of entrustment of a dangerous instrumentality is deeply affected by public interest, as all of the authorities recognize. It is for this reason that the strict rules of ownership, agency, imputed negligence and *respondeat superior* as to the driver do not apply in that type of action.

Since this case will be retried, plaintiffs' verdict directing instructions may be redrafted to bring them more squarely within the principles of the doctrine of entrustment.

The plaintiff made a submissible case for the jury under the evidence and the trial court properly refused Far-Go's motions for directed verdict and for judgment on that ground.

Far-Go also asserts that the judgment against it should be set aside and a judgment entered in its favor for the further reason that its liability was predicated solely upon the doctrine of *respondeat superior,* based upon the negligence of its employee, defendant Perry. Since the jury verdict exonerated Perry, it is argued, the judgment against it is not valid and it should be discharged.

█ The rule is well settled where a master's responsibility is purely vicarious, a jury verdict in favor of his allegedly negligent servant ordinarily relieves the master and results in his discharge. Stoutimore v. Atchison, T. & S. F. Ry. Co., 338 Mo. 463, 92 S.W.2d 658; Quinn v. St. Louis Public Service Co., Mo.Sup., 318 S.W.2d 316; Max v. Spaeth, Mo.Sup., 349 S.W.2d 1.

However, this rule has certain definite exceptions. One such is the situation where the evidence shows that the master is also negligent, either in an area independent of the negligence of the servant or in combination with the servant's negligence.

Grace v. Smith, Mo.App., 270 S.W.2d 79, aff. 365 Mo. 147, 277 S.W.2d 503.

Another exception is that in the event of such a faulty and inconsistent verdict, the judgment against the master will be reversed and the master discharged *only* if the jury has been properly instructed and the trial is otherwise free from error. Ruehling v. Pickwick-Greyhound Lines, 337 Mo. 196, 85 S.W.2d 602, 604; Lynch v. Hill, Mo.Sup., 443 S.W.2d 812, 818; Cameron v. Howerton, Mo.Sup., 174 S.W.2d 206, 209.

■ The first exception noted could be applicable to this case because the jury could find that Roberts was on the Far-Go equipment as Perry's helper; that he, Roberts, had been to Far-Go's headquarters in Norfolk, Virginia, for several days prior to the commencement of the haul to Tacoma, Washington; that Far-Go took no information from Roberts nor did it make any investigation as to his character or capabilities; and that Far-Go had full knowledge and had given express consent to the arrangements, as a result of which Roberts was later entrusted with the equipment.

The second exception certainly applies because the trial record is not free from but on the other hand is replete, with error.

A review of the instructions given in this case clearly shows why the jury brought in the inconsistent and invalid verdict.

The burden of proof instruction (Instruction No. 2) as given by the court, contained a very minor but most important modification of MAI 3.01, in that it told the jury, in part, " * * * The burden is upon plaintiffs to cause you to believe the propositions necessary to support their claim against *any* defendant. * * *" (Emphasis supplied.)

The plaintiffs offered three verdict directing instructions, one as to each defendant. They were as follows:

"INSTRUCTION NO. 3

Your verdict must be for plaintiffs against defendant Far-Go Van Lines, Inc., if you believe:

First, the driver Perry was operating the motor vehicle within the scope and course of his employment by defendant Far-Go Van Lines, Inc., and

Second, defendant Perry entrusted the tractor-trailer to defendant Roberts, and

Third, at said time defendant Perry knew that defendant Roberts was not competent to drive said tractor-trailer, and could foresee that it was probable that defendant Roberts would drive said truck, and

Fourth, defendant Perry was thereby negligent, and

Fifth, defendant Roberts was negligent in failing to keep a careful lookout, and

Sixth, such negligence of defendant Perry directly combined with the acts of defendant Roberts to cause damage to plaintiffs.

Acts were within the 'scope and course of employment' as that term is used in this instruction if:

1. they were a part of the work Defendant Perry was employed to perform, and

2. they were done by Defendant Perry to serve the interests of defendant Far-Go Van Lines, Inc.' "

\*      \*      \*      \*      \*      \*

"INSTRUCTION NO. 4

Your verdict must be for plaintiffs against defendant Perry, if you believe:

First, defendant Perry entrusted the tractor-trailer to defendant Roberts, and

Second, at the said time defendant Perry knew that defendant Roberts was not competent to drive said tractor-trailer,

and could foresee that it was probable that defendant Roberts would drive said truck, and

Third, defendant Perry was thereby negligent, and

Fourth, defendant Roberts was negligent in failing to keep a careful outlook, and

Fifth, such negligence of defendant Perry directly combined with the acts of defendant Roberts to cause damage to plaintiffs."

\*    \*    \*    \*    \*    \*

### "INSTRUCTION NO. 5

Your verdict must be for plaintiffs against defendant Roberts, if you believe:

First, defendant Roberts failed to keep a careful outlook, and

Second, defendant Roberts was thereby negligent, and

Third, as a direct result of such negligence, the plaintiffs were damaged."

The jury's verdict, as against Far-Go Van Lines, Inc., was necessarily bottomed upon, and the jury found, the hypothesized facts as required by Instruction No. 3, above quoted. This, of course, included a finding that Far-Go's employee, Perry, was negligent. This finding was completely inconsistent with the jury's acquittal of Perry under Plaintiffs' Instruction No. 4, above quoted.

Defendant Far-Go offered a converse instruction to Instruction No. 3, as follows:

### "INSTRUCTION NO. 7

Your verdict must be for defendant Far-Go Van Lines, Inc. if you do not believe each proposition submitted to you in Instruction Number 3."

which the jury presumably read and their finding necessarily carries with it a belief

and finding of the facts hypothesized in Instruction No. 3.

Defendant Perry offered a converse instruction, as follows:

### "INSTRUCTION NO. 8

Your verdict must be for defendant Ira Perry unless you believe each proposition submitted to you in Instruction Number 4."

The finding and verdict in favor of Perry was a determination by the jury that Perry was not negligent as hypothesized in Instruction No. 4. It thus becomes apparent that there is an irreconcilable conflict in the findings of the jury.

To compound this error, the form of verdict instruction (Instruction No. 11), included:

### "INSTRUCTION NO. 11

\*    \*    \*    \*    \*    \*
### FORMS OF VERDICT
\*    \*    \*    \*    \*    \*

If you find the issues in favor of the plaintiffs and against less than all defendants, you should name the defendant or defendants against whom you find and also the defendant or defendants in whose favor you find. In such cases, your verdict may be in the following form:

'We, the jury, find the issues in favor of the plaintiffs and against defendant _____ (here insert only the name of the defendant or defendants you find against) and we assess plaintiffs' damages at $_____ (stating the amount), and we further find the issues in favor of the defendant _____ (here insert the name of the defendant or defendants in whose favor you find).

_____ Foreman.' "

A review of these instructions clearly indicates that the jury was not properly

instructed on the law applicable to this case. In fact, the instructions were so misleading and confusing that they necessarily resulted in the improper and invalid verdict and, in fact, constituted misdirection and reversible error.

In the case of Cameron v. Howerton, Mo. Sup., 174 S.W.2d 206, the negligent employee received the jury's verdict which was in turn against his employer in a case based entirely upon the doctrine of *respondeat superior*. The trial court gave a form of verdict instruction identical in language to that part of Instruction No. 11, above quoted.

The trial court sustained plaintiff's motion for a new trial as to Howerton, and set aside the verdict against Howerton's employer. In affirming this action and after quoting the above form of verdict instruction, the court held that the giving of such instruction was error, and said, 1.c. 209–210:

"* * * The verdict absolving Howerton would have relieved the sand company (employer) had the trial been free from error. However, where, as in this case, the instruction on the form of the verdict, and also Instruction 'G' asked by the defendants, erroneously authorized an inconsistent verdict, a trial court has authority to declare a mistrial and should do so. Perhaps the jury based its verdict on the theory that since Howerton was merely the alter ego of the sand company, the sand company should pay for damage caused by the negligence of the servant. An erroneous theory? Yes, but the instructions were also erroneous."

To like effect: Atterbury v. Temple Stephens Co., 353 Mo. 5, 181 S.W.2d 659, 661; Ruehling v. Pickwick-Greyhound Lines, 337 Mo. 196, 85 S.W.2d 602, 604.

In the case of Lynch v. Hill, Mo.Sup., 443 S.W.2d 812, the trial court again gave a verdict directing instruction, almost identical to the one here and MAI 36.05, which resulted in a verdict in favor of the employee and against the employer in a case based entirely upon *respondeat superior*. The trial court granted a new trial on all issues, which action was affirmed. The court said, 1.c. 818:

"* * * As stated in Ruehling v. Pickwick-Greyhound Lines, 337 Mo. 196, 85 S.W.2d 602, 604, 'The giving, by the trial court, of this form of verdict was in effect, and tantamount to, an instruction that they were authorized to make such finding and was apparently so understood by them and therefore misleading and prejudicial'. * * *"

After holding that this was reversible error, the court in Lynch said, 1.c. 818:

"The verdict exonerating defendant Lynch (employee) would have entitled defendant Hill (employer) to discharge *if the trial had been free of error*. The trial was not free of error, however, because Instruction number C-12, offered by the court, erroneously authorized an inconsistent verdict. In this situation the trial court had the authority and duty to upset the verdict and judgment and grant a new trial. * * *"

No other conclusion can be reached in this case than that the jury was erroneously instructed and invited to bring in an inconsistent and void verdict and, in the interest of justice, the judgment entered thereon must be set aside and the cause remanded as to all parties and all issues for a new trial. In the light of what has been here said, the jury in the retrial of this action can be properly instructed by the court.

To add further to the confusion of this trial and the bizarre verdict, the jury did not return *any* verdict as to defendant Roberts.

At the time of the institution of this case, he was in custody and thereafter was confined in the West Virginia State Penitentiary, from whence he had escaped. Summons was issued for him for service

in West Virginia upon his Committee, one Pete Sparacio, Sheriff of Webster County (Section 28–5–33 et seq., West Virginia Code) and personal service was had upon Sparacio in West Virginia, apparently under the single tort long-arm statute of Missouri.

After unsuccessful attempts to have Continental Insurance Company afford Roberts a defense, *forma pauperis* affidavits were filed in this cause on his behalf. He filed no other pleadings, made no appearance in person or by counsel, and was in default.

His deposition was taken by the other defendants in West Virginia and parts of it were read in the trial by both sides. No judgment, interlocutory or otherwise, was requested by default. The parties and the court proceeded with the trial as though defendant Roberts was not in default, conflicting evidence was offered as to his negligence, and the issue as to his negligence and causal connection to plaintiffs' damage were submitted to the jury by instruction as viable issues (Instruction No. 5).

After the return of the verdict (silent as to Roberts), although this omission was called to the court's attention, the verdict was received, the jury discharged, and judgment entered thereon.

Thereafter, plaintiffs filed a motion under Rule 74.045 for interlocutory judgment against defendant Roberts, or, in the alternative, for a new trial. The court on December 17, 1970 (22 days after the verdict was returned) entered a judgment against Roberts for $3,000.00 and costs.

■ It is clear that such judgment was not *interlocutory* under Rule 74.045 but *final,* and that the court was without authority or power to enter such judgment. State ex rel. Great American Insurance Company v. Jones, Mo.Sup., 396 S.W.2d 601, 603; Thompson v. Hodge, Mo.App., 348 S.W.2d 11; Adams v. Adams, Mo.Sup.,

294 S.W.2d 18. Such entry did not correct the fatal omission in the jury's verdict.

■ In actions for the recovery of money, the jury must return a general verdict (Section 510.230 V.A.M.S.; Rule 71.02, Rules of Civil Procedure) and such verdict must be responsive to all issues and dispose of all parties. Lummi Bay Packing Co. v. Kryder, Mo.App., 263 S.W. 543; Spangler-Bowers v. Benton, 229 Mo.App. 919, 83 S.W.2d 170, 175; Thorne v. Thorne, Mo.Sup., 350 S.W.2d 754.

■ If a jury's verdict does not dispose of all parties and all material issues in the cause, the court must require the jury to correct its verdict or to find a new one. The court has the power to correct or amend a verdict after discharge of the jury only in matters of form and not in matters of substance. Thorne v. Thorne, supra; Johnson v. Hunter, Mo.App., 398 S.W.2d 449; Robinson v. Southwestern Bell Tel. Co., Mo.App., 434 S.W.2d 249, 251.

Even though the defendant Roberts was in default, that fact was ignored by the parties and the court and the trial was conducted, the jury instructed, and the cause submitted as a contested matter as to him. The jury did not perform its function nor follow the instructions of the court by failing to determine the issues as to him, and the court exceeded its power by entering a final judgment against Roberts not based upon a verdict.

In another trial, the parties may wish to adopt another approach to defendant Roberts, but the present judgment as to him should be reversed and remanded for further proceedings with the rest of the case.

Since this matter must be retried for the reasons above stated, the points raised by plaintiffs on appeal need not be discussed at length. These points have been carefully reviewed in the light of the transcript and one *caveat* seems appropriate.

All of the evidence offered with regard to the matter of damages came from the plaintiffs' evidence. This undisputed evidence was that from $1200 to $1300 had been expended for temporary repairs; the market value of the property before and after the damage had diminished $18,000.-00, and that the plaintiffs had an unguaranteed bid for repairs by the company that had originally constructed the building of $13,000.00. Under this state of the record, it is indeed difficult to determine how the jury arrived at the figure of $3000.00 as its verdict against Far-Go, except upon the basis of the following occurrence.

Plaintiffs complain of a trial incident wherein counsel for the defense obviously attempted to bring out the fact that Far-Go and Perry were uninsured and that the insurance carrier was proceeding under a reservation of rights. Although the record of the incident may have been imperfectly made and protected, there can be little doubt that the jury may have gotten the message and permitted its evaluation of damages to be affected thereby.

■ It has long been the rule that only in rare cases and where relevancy is clearly shown should the fact of the existence of insurance coverage be admissible. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463. Whether such rule is realistic or valid in the light of modern conditions is not for discussion here.

■ Of equal force is the rule that it is generally improper to permit a showing of poverty on the part of a defendant in a damage action, wherein only compensatory damages are sought. Within the scope of this prohibitory rule is the fact of "no insurance", Guiley v. Lowe, Mo.Sup., 314 S.W.2d 232; Wallace v. Whitzel, Mo.App., 324 S.W.2d 157; Conrad v. Twin Oaks, Inc., Mo.App., 344 S.W.2d 286; or the fact of defense under reservation of rights, Collins v. Nelson, Mo.App., 410 S.W.2d 570.

The trial incident herein complained of is, so far as this record shows, completely immaterial to the issues. Without further showing of materiality, this incident should not occur upon retrial.

For the reasons herein stated, the judgments below are reversed and the cause remanded for a new trial upon the issues of liability and damages. It is so ordered.